## HOWELL v. HAIR.

1. Where the statute of limitations of another state is relied on by the plaintiff in a suit, as vesting in him a right to the property in controversy, if there is a saving or exception in the statute, that will restrain its operation in favor of the plaintiff, it is the duty of the defendant to show it, and not that of the plaintiff to negative its existence.

2. A saving or exception, restrictive of its operation, not found in a statute of limitations, will not be *implied*.

3. The mere fact that a party, having the rightful title to property in Georgia, is a resident of the state of Alabama, and is ignorant as to where the property is, does not relieve him from the necessity of instituting his action for its recovery, within the period, prescribed by the statute of limitations of the former state to bar his right.

4. A purchaser of property, for valuable consideration, without notice, who has been in the quiet and peaceable possession of such property, in the state of Georgia, for a period sufficient to render the statute of limitations of that state an available bar, may recover it from the former owner, from whose possession it was tortiously or feloniously taken, and who has retaken it from such purchaser, after the statute had completed a bar.

5. The statute of limitations of the state in which property is, having created a bar, the title of the possessor of it is complete, although it may be afterwards removed into another state having a longer period of prescription.

Error to the Circuit Court of Sumter.    Before the Hon.
Geo. Goldthwaite.

THIS was an action of trover by plaintiff, against defendant in error, to recover damages for the conversion of a slave. The facts are set out in a bill of exceptions found in the record.   The slave in controversy was once the property of William Drummond, deceased, upon whose estate defendant is administrator, and was left with his wife in Florida, by said Drummond, upon his removal to this state.   About the year 1832, the slave was taken by fraud, force, or felony, from the possession of Mrs. Drummond, in Florida, and carried to the state of Georgia, and there sold.   In 1832, one Scott was in possession of the slave in Georgia, and, about

the 24th of April, 1834, sold him to one Foster, who in the same year sold him to the plaintiff. The plaintiff and his vendor were both *bona fide* purchasers, for a full and valuable consideration, without notice, and the former retained quiet and peaceable possession of the slave in Georgia, until some time in the latter part of the year 1839, when Drummond, the defendant's intestate, covertly obtained possession of him, and brought him to Alabama. Since that time, the slave has been in the possession of Drummond, and his administrator since his death. The statute of limitations of Georgia, which is quoted at length in the opinion of the court, was read in evidence by the plaintiff. Drummond lived in this State continuously from the time he left Florida to the time of his death, and though he made inquiry, was unable to discover where said slave was, until a few months before he got possession of him in Georgia.

The court charged the jury, that if they should believe from the evidence, that the slave was originally the property of Drummond in Florida, and was taken from his wife, with whom he had left him, by fraud, force, or felony, and carried into the state of Georgia, and there sold to a *bona fide* purchaser for value, without notice, and was retained by said *bona fide* purchaser in his possession under said purchase, for more than four years in the said state of Georgia, the said Drummond being the whole of this time a resident citizen of the state of Alabama, and having no notice of the whereabouts of said slave, or unable to discover where he was by reasonable diligence, that the title accruing to said plaintiff under his purchase, possession, and the statute of Georgia, would not authorize him to recover said slave of the said Drummond, in this state, or his administrator, the said defendant. To this charge the plaintiff excepted, and now assigns it as error.

R. H. SMITH, for the plaintiff in error.

1. The charge of the court was abstract. There was no evidence conducing to show fraud, force, or felony.

2. It is not necessary to consider whether a fraudulent concealment of a possession derived by fraud is an exception

to the statute, because there was no evidence of such concealment.

3. Obtaining possession by fraud does not prevent the statute from running. 9 Verm. 110; 17 Wend. 202.

Then we, (being a *bona fide* innocent purchaser) could if we had been sued in Georgia, have set up title by time. And if we had a title by time, we can rely on it in Alabama.— Goodman v. Munks, 8 Por. 84.

HUNTINGTON and HOYT, for defendant in error.

1. The intestate of the defendant in error, as a citizen of Alabama, had a right to avail himself of a statute of this state which is in direct conflict with the legislation of the state of Georgia on the same subject. The Alabama statute is: "If any person or persons, against whom there is or shall be any cause of action, as is specified in the preceding sections of this act, is, are, or shall be, *out of this state at the time of the cause of such action accruing*, or at any time during which a suit might be sustained on such cause of action, then the person or persons who is, or shall be entitled to such action, shall be at liberty to bring the same against such person or persons after his, her or their return into this state; and the time of such person's absence shall not be accounted or taken as part of the time limited by this act." Now the record shows, that Henry Howell was out of this state when the cause of action in favor of William Drummond accrued against him; consequently, whatever may be the phraseology or stringency of the Georgia statute, Drummond would always have had six years after the return or coming of Howell within this jurisdiction, in which to have brought his action, and Howell could not have objected to such action, that the Georgia statute had given him a title by prescription, because such an objection, if allowed, would render nugatory the statute of a sovereign state, enacted for the protection of its own citizens. Hence it follows, that the litigation being in this state, Drummond had a right of action by the *lex fori;* his administrator had the same; yet he could not have had such right of action if the Georgia statute of limitations should be permitted to do away his title. We therefore respectfully suggest, that the effect of a decision in this case as

contehded for is to permit a Georgia statute to override an Alabama statute, and that in our courts, and as against one of our own citizens.    The laws of a sister state cannot be permitted to defeat the provisions of our own laws, to interfere with our policy, or to work a prejudice to our citizens. Riggs, use, &c. v. Dyche et al. 2 Sm. & M. 615.    Our own court has decided, that a replication to the plea of the statute, that at the time of the execution of the note sued on, the maker resided in North Carolina, and had not resided in Alabama for six years before suit brought, is good on demurrer.    Towns v. Bardwell, 1 S. & P. 36, confirmed in Watson v. Brazeal, 7 Ala. 452 ; see also, Smith v. Heirs of Bond, 8 Ala. 386 ; Ruggles v. Keeler, 3 Johns. 263, and 7 Mass. 515.    The necessary result of such a decision in the present case is, that Howell has a right of action against Drummond's administrator, founded on the Georgia statute, and that Drummond's administrator has the same right of action against Howell, founded on the Alabama statute, whenever Howell returns, or comes to this state.    But this right of action might have been asserted by a writ of detinue, levied on the very negro who is the subject of this controversy ; yet by the decision of this court, the boy could not have been so taken and levied on, because Howell had a title to him by prescription, founded on the Georgia statute.

The authorities relating to the extra territorial efficacy of the statute of limitations, have reference only to cases where both parties were subject to the jurisdiction of the foreign state, when the bar arising from its statute of limitations attached.    See Story's Confl. L. 489, note, and Bulger v. Roche, 11 Pick. 36.

COLLIER, C. J.—The only question in this case is, whether, if property be taken from the possession of the rightful owner, in Florida, by "fraud, force, or felony," carried to Georgia, and there purchased by a third person, for a valuable consideration, without notice of the circumstances of the abduction, or the want of title, in the party who removed it, the possession of the vendee, if continued, in the latter state, for a longer period, than the statute of limitations of that state prescribes, as a bar to an action for its recovery, will give

the vendee a title, on which he may recover the property of the original owner, who "covertly" took it into possession, and removed it into this state? The solution of this question must depend upon the act of limitations of Georgia, which, so far as is disclosed by the record, is as follows:—

"All actions of trespass *quare clausum fregit*, all actions of trespass, detinue, actions of trover and replevin for taking away goods and cattle, all actions upon accounts and upon the case, (other than such accounts as concern the trade of merchandize, between merchant and merchant, their factors or servants,) all actions of debt grounded upon any lending, or contract without specialty, all actions of debt for arrearages of rent, and all actions of assault, menace and battery, wounding and imprisonment, or any of them, which shall be sued, or brought at any time after the passing of this act, shall be commenced and sued within the time and limitations hereinafter expressed, and not afterwards; that is to say, the said actions upon the case (other than for slander,) and the said actions for account, and the said actions for trespass, debt, detinue and replevin for goods and cattle, and the said action of trespass *quare clausum fregit*, within three years next after the passing of this act, or within four years next after the cause of such actions or suits, and not after; and the said actions of trespass, assault, battery, wounding imprisonment, or any of them, within one year after the passing of this act, or within two years next after the cause of such action or suit, and not after, and the said actions upon the case for words, within six months next after the passing of this act, or within six months next after the words spoken, and not after."

This enactment, it will be observed, contains no saving or exception, under the influence of which a plaintiff's right of action is continued beyond the period of prescription, and we are not authorized to presume that any such exists in the legislation of Georgia, applicable to the present case. If there is such a provision, it was incumbent upon the defendant to have produced it, and not upon the plaintiff to negative its existence.

In respect to such statutes, it has been so often decided, as to be now indisputably settled, that an exception will not

be implied for the purpose of arresting their operation; that unless there can be found in the statute itself some ground for restraining it, it cannot be restricted by arbitrary addition. Ang. on Lim. 2d ed. 205, 518, *et seq.* This being the law, the residence of the defendant's intestate in Alabama, even coupled with his ignorance where the slave might be found, did not relieve him from the necessity of instituting his action in Georgia, within four years after the sale, in order to prevent the operation of the statute we have cited, when applied to such a case as the present. If solicitous for the recovery of his rights, it devolved upon him to inquire diligently to what point his property had been removed; and if he prosecuted such an inquiry unsuccessfully, it was his misfortune. Bowman v. Wather, 1 How. Rep. (U. S.) 189. If, in the scale of moral justice, his claim was more meritorious than the plaintiff's—a question not presented for our decision—it is a sufficient answer to say, that the legislature have prescribed a period after which it cannot be made available, and that period had elapsed before the plaintiff's possession was disturbed.

It is needless to consider whether a possession, commenced and continued by "fraud, force or felony," can ripen into a title by prescription, as the plaintiff's possession cannot be assigned to either of these categories. The bill of exceptions explicitly states, that he was a *bona fide* purchaser for value, without notice that even suspicion rested upon the title he acquired. These facts being conceded, his possession became adverse the very instant it was acquired, and from that time the statute of Georgia began to run.

Detinue or trover may be maintained upon the mere ground of a previous possession, originally acquired without force or fraud, and enjoyed for a sufficient length of time to make the statute of limitations an available bar. So it has been often decided, that where the possession of personal property has been held in one State for a period prescribed by the laws of that State, beyond which an action cannot be maintained for its recovery, if the possessor afterwards removes into another State, which has a longer period of prescription, the original owner cannot successfully assert a title against him in the latter State. Goodman v. Munks, 8 Port.

Rep. 84, and cases there cited. None of these citations seem to consider it essential to the operation of the act, that the plaintiff resided in the same State, in which the property was enjoyed for the period prescribed, unless the statute contained an exception in favor of persons "beyond seas," &c.; but the reverse, if not explicitly decided, is clearly inferable from the reasoning they employ.

If the defendant's testator had instituted his action in Georgia more than four years after the plaintiff purchased the slave, he must have failed, though during all that time, he resided in Alabama; for the reason that the statute of that State is peremptory in its terms, without any saving in favor of *non-residents.* The bar then being complete in Georgia, the statute (as we have seen) gave a title which may be asserted in any other State, unless it be held to be unconstitutional or inoperative *extra territorium.* We cannot deny to it effect for the first reason; because, not only the constitutionality, but the policy of such enactments, is too well settled to be now controverted. Ang. on Lim. 18 to 20, and cases cited, 2d ed.; McElmoyle v. Cohen, 13 Pet. Rep. 312. The cases collated in Goodman v. Munks, conclusively show that the statute having run in the State where the property was, the title of the possessor is complete every where. Mr. Justice Story, upon this point, says: "Suppose, for instance, (as has occurred) personal property is adversely held in a State for a period beyond that prescribed by the laws of the State, and after that period has elapsed, the possessor should remove into another State which has a longer period of prescription, or is without any prescription; could the original owner assert a title there, against the possessor, whose title, by the local law and the lapse of time, had become final? It has certainly been thought that in such a case, the title of the possessor cannot be impugned. This subject may be deemed by some persons still open for future discussion. It has however, the direct authority of the supreme court of the United States in its favor, and its correctness has been recently recognized by the court of common pleas in England." Story's Confl. of L. § 581, and notes. This being the law, as this court has repeatedly held, it is needless to inquire what influence statutes of limitation professedly upon other

interests or causes of action have, when invoked in a foreign jurisdiction. Id., and § 582; Don v. Lippman, 5 Clark & Fin. Rep. 1.

It is however insisted by the defendant, that the statute of this State must be looked to as furnishing the period of limitation, and the time of the plaintiff's residence in Georgia cannot be computed; and the 8th section of the act of 1802 has been cited as specially applicable. That section declares, that if a party against whom there shall be any cause of action as specified in the act, "shall be out of this State at the time of the cause of such action accruing, or at any time during which a suit might be sustained on such cause of action, then the person or persons who is, or shall be entitled to such action, shall be at liberty to bring the same against such person or persons, after his, her, or their return into this State; and the time of such person's absence shall not be accounted or taken as a part of the time limited by this act." Clay's Dig. 327, § 84. The view we have taken of the effect of the plaintiff's possession in Georgia, makes this enactment wholly inapplicable: besides, the terms used, indicate that it was intended to apply to defendants who resided, or at least had been in this State; or if to a plaintiff, such must have been the fact in respect to him. If the party had not been here previously, how could he "return." But we will not extend this view, as the act is foreign to the point in hand.

The case of Towns v. Bardwell, 1 Stew. & Por. Rep. 36, bears no analogy to the present. There, the defendant pleaded the statute of limitations of this State, to an action on a promissory note; to which the plaintiff replied, that the maker of the note resided in North Carolina at the time it was made, and had not resided in Alabama six years before the writ issued. The replication was held good on demurrer, without reference to the 8th section above cited. It is perfectly clear that the Alabama act of limitations did not begin to run until the defendant removed within the State. But if the North Carolina statute had completed a bar to an action there, then the principle settled in Goodman v. Munks would have applied, if it had been relied on. Watson v.

Brazeal, 7 Ala. Rep. 451, and Smith v. Bond's heirs, 8 Ala. Rep. 386, decide no ·question in respect to the effect of a foreign statute of limitations, and do not lend any aid to the defence set up in the present case.

The argument that, although the statute designates the action of *trover*, it does not limit the time within which it must be instituted, cannot be supported. That action is said to belong to the class of actions on the case, and was doubtless so considered by the legislature of Georgia. The result of these views is, that the circuit court erred in the charge to the jury. Its judgment is consequently reversed, and the cause remanded.