## THOMASON *vs.* ODUM.

1. The act of 1846 allowing several replications to a plea of the statute of limitations, and other pleas therein specified, (Pamphlet Acts 86,) applies to a plea setting up the statute of limitations of another State.

2. The proviso to the statute of limitations of Florida in favor of persons " beyond the seas or out of the country," includes a resident citizen of another State who has never been in Florida.

3. A replication to a plea of the statute of limitations of another State, alleging that the property was converted in this State, and carried into another, where it was purchased by defendant and brought back again, and that it has not been in this State more than four years since the conversion, is bad on demurrer.

APPEAL from the Circuit Court of Conecuh.

Tried before the Hon. ANDREW B. MOORE.

DETINUE by the appellant, Matthew D. Thomason, against Aaron Odum, for a certain negro woman, named Watsey, and her three children.

The defendant, amongst other pleas, pleaded three pleas, in effect as follows : that one Delilah Lawson, in 1839, purchased, in the State of Florida, without notice of the plaintiff's claim, and for a fair and full consideration in money, to-wit : the sum of five hundred and seventy five dollars, of one N. W. Hobson, the said negro woman Watsey, who was then in the possession of the said Hobson, and that the said Mrs. Lawson held the said negro woman adversely to all the world for more than five years, which is the period of the Florida statute of limitations ; and that the defendant, after the expiration of the said five years, purchased of the said Mrs. Lawson, and without notice of the plaintiff's claim, the said negro with her children or increase, for the consideration of eight hundred dollars, and has held them up to the time of trial.

To these pleas the plaintiff replied two replications : 1st, that in the statute of limitations of Florida there was a proviso or exception, as follows, to-wit :

" If any person or persons, that is or shall be entitled to any such actions of trespass, detinue, actions of trover, replevin, actions of account, actions of debt, actions for trespass, for assault, menace, battery, wounding or imprisonment, be or shall be, at the time of any such cause of action given or accrued, beyond the seas or out of the country, then such person or persons shall be at liberty to bring the same actions, so as they take the same within such times as is before limited, after their coming to or being returned from beyond the seas or from without this country, as by other persons having no such impediment should be done ;" and the plaintiff avers that, at the time the said property was converted, he was a resident citizen of the State of Tennessee ; that he continued to reside there until the year 1839, when he removed to Alabama, where he has resided until suit was brought, and that he has never been in the State of Florida from the time the action accrued up to the commencement of this suit ; that said negro woman was fraudulently and tortiously taken from his possession in Alabama, by one N. W. Hobson in the State of Alabama, and thence taken by him to Florida, and there disposed of to one Delilah Lawson, who retained the possession of said woman and her increase in said State of Florida for a long time, to-wit : until the year 1847, when said slaves were by her placed in the hands of the said defendant, and by him brought back to Alabama for the first time since 1839, when they were so as aforesaid carried by the said Hobson to the State of Florida ; and plaintiff avers that, during the whole time, he has been out of the State of Florida.

The second replication is, in effect, that the slave was tortiously and fraudulently taken from the possession of the plaintiff in Alabama by the said Hobson, on the 29th day of June, 1839, and thence carried to the State of Florida and sold to the said Mrs. Lawson, who retained her there until the year 1847, when the slaves were delivered to the defendant, who brought them back to Alabama the year last aforesaid ; and the plaintiff further avers that he has never been a citizen of the State of Florida, and that said slaves from the time they were first car-

ried away in 1839 until they were brought back in 1847 have not been in Alabama for the space of four years.

To these replications the defendant demurred, and the demurrers were sustained.

The decision of the court on these demurrers is here assigned for error.

John A. Elmore and J. K. Henry, for appellant :

1. The act of 1846 is general in its terms, and does not restrict the right of filing several replications to the statute of limitations of Alabama. The statute of another State, or lapse of time, is equally within the reason, and therefore within the meaning and terms of the law.

2. But, if the statute does not apply, the objection could not be reached by demurrer, but by motion to strike out. The pleading of several replications is not duplicity, any more than filing several pleas.

3. The first replication brings the plaintiff within the exception of the Florida statute. The terms "beyond seas" and "out of the country," in this country, mean "beyond the jurisdiction of the State."—Angell on Limitations 210 ; Faw v. Roberdeau's Executor, 3 Cranch 174 ; 3 Wheat. 341 ; Bank of Alexandria v. Dyer, 14 Peters 141. Admitting this, however, to be the proper construction of the terms used in the proviso, it is still contended that the exception in the statute has reference only to those who have absented themselves from the State, and does not include those who never were within the State.— This construction is neither warranted by the language of the statute, nor sustained by authority.—State Bank v. Seawell, 18 Ala. 616 ; Angell on Limitations 214.

4. The second replication raises the question, whether, when property is wrongfully and fraudulently converted in this State, and taken clandestinely into another, and there held for a sufficient length of time to bar a recovery under the statute of limitations of that State, and then brought back into this State, where suit is brought by the owner for its recovery, the wrongdoer can defeat the action by pleading that statute ; or, in other words, when the cause of action arises in this State, is not the plaintiff entitled to the benefit of our own statute of six years? or, can our statutes be defeated and annulled, in our own courts,

by the laws of another State, when our courts first acquired jurisdiction? 'Such is not the course of our decisions.—Bohannon v. Chapman, 13 Ala. 641; Same v. Same, 17 Ala. 696. The cases of Howell v. Hair, 15 Ala. 174, and Jones v. Jones, 18 Ala. 248, do not at all conflict with this position. Considerations of policy, and the principles of international law, sustain the decisions in Bohannon v. Chapman, and show that, when the cause of action accrues in our State, and is sought to be enforced in our courts, our statute must govern it.

WATTS, JUDGE & JACKSON, *contra :*

To show that the court properly sustained the demurrer to the replications, we make the following points, and support them by the authorities cited :

1. More replications than one cannot be replied to the same plea.—Gray v. White, 5 Ala. 490 ; Stiles v. Lacy, 7 Ala. 17; Vance v. Wells & Co., 8 Ala. 401. The demurrer in this case was general. The statute (Acts of 1846, page 36,) does not relieve these replications from the objection. This statute simply applies to a case when the statute of limitations of our own State is pleaded. In the case at bar, the plea is not in fact a plea of the statute of limitations ; it is a plea setting forth facts which give a title to the property sued for.

2. The replications do not answer the pleas. A replication, to be good, must either deny positively the allegations of the plea, or it must confess and avoid by setting up distinct facts. The replications do not deny; neither do they confess the allegations of the pleas ; and for this reason the demurrer should have been sustained, if for no other.—Whitehurst v. Bay, 8 Ala. 375 ; Mason v. Craig, 3 S. & Porter 389.

3. The replications are bad. The defendant acquired a good title to the property, because the person from whom he bought, Mrs. Lawson, had acquired a good title in Florida, by having purchased, *bona fide,* for full consideration, and retained the negroes adversely for more than five years in the State of Florida.—Howell v. Hair, 15 Ala. 194 ; Newcombe v. Leavett, 22 Ala., decided by Mr. Justice Gibbons at the last term of this court. These cases cover all the points made in this.

4. The replications are bad, admitting the position of the counsel to be true, because they do not negative the idea that the

plaintiff had gone to the State of Florida. The replication simply says, that the plaintiff resided out of the State of Florida, and never has been a citizen of Florida. The proviso to the Florida statute says, after their "coming to or being returned from beyond the seas, or without this country," &c.— The plaintiff must by his replication place himself fully and squarely within the exception to the statute, else his replications are bad. This he has not done.

5. But the argument of the plaintiff in error does not meet the question presented by the record. The record shows the case of one person in Florida, purchasing a negro *bona fide*, on full consideration, without any notice, and retaining that negro as her own for more than five years in that State. If any cause of action the plaintiff had against her, it accrued in Florida, and not in Alabama. The defendant is a *bona fide* purchaser from her. He has no connection with the man who fraudulently took the property from the possession of the plaintiff in Alabama.

GIBBONS, J.—The ruling of the court below on the demurrers filed to the defendant's replications, constitutes the sole question for the revision of this court.

It is contended by the defendant in error, that the demurrers should have been sustained, because the plaintiff had no right to file more than one replication to each plea, and that the pleas, in reply to which the replications are filed, do not fall within the statute of 1846. The language of the section of the act referred to, is as follows: "That hereafter the plaintiff shall have a right to reply as many several matters to any plea of the defendant of set-off, or plea with notice of set-off, or plea of infancy, or the statute of limitations, as the circumstances of the case may seem to require; *provided*, the several matters replied are pertinent to or in avoidance of the matter of the plea." It is undoubtedly true that, where several replications are filed to one plea, unless they are authorized by some special act of the legislature, a general demurrer will prevail as to all of them together, whatever may be the individual merits of each one when considered by itself.—Vance v. Wells & Co., 8 Ala. 401. But in the present case, we consider the language of the above recited act broad enough to cover the case presented, and that the plaintiff was authorized to file as many replications

as he pleased to the defendant's plea of the statute of limitations.  It is true the plea is the statute of Florida, but we consider it nevertheless a plea of the statute of limitations, and as falling within the provisions of the act.  The language of the act does not limit the plea to the statute of limitations of Alabama, and this would, in our opinion, be giving to the act an interpretation too restricted,. and never designed by the legislature.

The first replication presents the question, whether the plaintiff is within the proviso or saving clause of the statute of Florida, set out in the plea.  The demurrer, of course, admits all of the allegations of the replication to be true; the question presented, therefore, is, whether a non-resident of the State of Florida, who was such at the time the cause of action accrued, and who has never been in that State from the time that such cause of action accrued up to the commencement of the present suit, is within the saving clause of the statute or not.

We remark, in the first place, that, if language can be made plain, it would seem that a portion of the language of the proviso quoted, has its meaning stamped upon it too plainly to be mistaken.  After stating that, if any person or persons, who shall be entitled to any action, (the one adopted in the present suit included *eo nomine*,) "shall be beyond the seas, or out of the country, then such person or persons shall be at liberty to bring the same actions, so as they take the same within such times as is before limited after their coming to, or being returned from beyond the seas, or from without this country, as by other persons having no such impediment should have been done."  This language is extremely broad, and would seem to include as well non-residents as those who resided in Florida but were temporarily abroad.  "Beyond the seas, or out of the country," are the terms used to define the classes of persons to whom the saving clause extends; and again, in speaking of commencing their actions after the impediment is removed, the terms are, "after their coming to, or being returned from beyond the seas, or from without this country."  The first of the last named phrases seems to have been employed by the legislature with the distinct view of defining those persons who never had resided in the State, as distinguished from those who resided there, but were temporarily absent.  To this latter class

the phrase, "or from without this country," seems to have been applied. This construction leads directly to the conclusion, that the plaintiff was within the proviso, and the demurrer was erroneously sustained.

We do not, however, choose to rest our decision solely upon the construction which we think the language of the proviso above quoted naturally demands upon its face. We think the authorities are clear also, in favor of such a construction, and nearly, if not quite undisputed. In the case of Faw v. Roberdeau's Executor, 3 Cranch 174, Chief Justice Marshall remarks : "Beyond the sea and out of the State are analogous expressions, and are to have the same construction." In speaking of this same expression, "beyond the seas," Mr. Angell remarks : "The before mentioned exception is not confined to subjects who may occasionally leave the country, but is general, and extends to foreigners who are constantly resident abroad.—Thus, it was adjudged that the statute of James only begins to run against a plaintiff, a foreigner, from his coming to England. So that, if he did not go to that country for many years after the commencement of the cause of action, he will still be entitled to six years from the time he goes there, to bring his action. And if he never should go to England, he has always a right of action after six years are elapsed. But, if one of several plaintiffs be abroad, and the other in England, the action must be brought within six years after the cause of action arises. The act of Maryland, of 1818, repealed the exceptions or savings in former statutes in favor of persons *beyond seas.* The unlimited latitude, it was thought, granted to persons *beyond seas,* was considered by the Legislature as unreasonable ; and it could constitute no actual grievance or just cause of complaint, if they were reduced to the same standard as the citizens of Maryland. Neither was the repeal a violation of any constitutional obligations of the State ; nor was any obligation of contract at all violated or impaired by it."—Angell on Limitations 213 § 13.

This authority would be conclusive, to show that the demurrer to the first replication should have been overruled, even if no other term had been employed in the saving clause than that of "beyond seas." The text of the author above quoted we find based upon authorities in England, and in this country, of a

character that we are not at liberty to disregard, and we are satisfied it is a sound exposition of the law.

But it is insisted, that this construction gives to the non-resident of the State of Florida a superiority over a citizen, inasmuch as five years bar the action of detinue against a citizen, whilst a foreigner or non-resident would be entitled to his action at any distance of time. This is true, but it is not for us to criticise or find fault with the policy of the State of Florida in adding such a saving clause to her statute of limitations; it is enough for us that she has thought proper to adopt it, and it is our duty to declare the law as we find it, whatever may be our own peculiar views as to the correct policy of that State.

Again; it is insisted that the cases of Howell v. Hair, 15 Ala. 194, and Newcombe v. Leavitt, 22 Ala. 631, are decisive of the question under consideration in favor of the ruling of the court below. In this we cannot concur with the counsel. We are unable to see how either of the above cited cases has any bearing whatever upon the question. In the case of Howell v. Hair, the statute of limitations of Georgia was relied upon to show title in the plaintiff. The court sustained the title, ruling that the title made by the statute of Georgia, after the slave was taken from the possession of the defendant, would override the title of the latter. Judge Collier, in delivering the opinion in this case, puts it upon the ground that there is no saving clause in the statute. He says: "This enactment, it will be observed, contains no saving or exception, under the influence of which a plaintiff's right of action is continued beyond the period of prescription, and we are not authorized to presume that any such exists in the legislation of Georgia, applicable to the present case. If there is such a provision, it was incumbent upon the defendant to have produced it, and not upon the plaintiff to negative its existence." So in the case of Newcombe v. Leavitt, the statute of Mississippi was interposed as a bar to the right to condemn the property levied upon, and this court decided that said statute did constitute a bar; but there was no saving clause in that statute, and nothing said about any saving clause whatever. The only application that either of the above cited cases could have to the case at bar, would be to sustain the defendant's plea. For this they are undoubted authority, but have no other application. The present replication, how-

ever, admits the subject matter of the plea to be legal, and the plea good, but seeks to avoid it, by the saving clause of the statute. Our conclusion is, that the saving clause as pleaded, with the averments accompanying it in the replication, avoids the plea, and the demurrer to it should therefore have been overruled.

The reasoning that we have employed to show that the first replication was good, is equally conclusive to show that the second is bad. It will be observed that the first replication derives its genuineness entirely from the saving clause of the statute of Florida, without which it would have been no answer to the plea interposed by the defendant. The second replication is made up of the averments that the conversion was made in Alabama, in 1839, and the slave taken thence to Florida, where she was retained until 1847, and then delivered to the defendant, who brought her back to Alabama, with the further fact that the plaintiff had not in the meantime been in Florida, nor had said slave in the meantime been in Alabama four years.—— We see nothing in this replication that answers the plea, or shows any reason why the statute of Florida would not perfect a title in favor of the defendant, and consequently a bar to the plaintiff's suit in Alabama for the slave. The replication does not rely upon the saving clause of the statute, but upon facts outside of it. The demurrer to it was properly sustained.

For the error above noted the judgment of the court below is reversed, and the cause remanded.