Elmore et al. v. Mustin.

| 28 | 309 |
| 94 | 298 |
| 28 | 309 |
| 106 | 136 |

ELMORE ET AL. *vs.* MUSTIN.

[DETINUE FOR SEVERAL SLAVES BY INFANTS CLAIMING UNDER DEED OF GIFT AGAINST ADMINISTRATOR OF DONOR.]

1. *Instrument held a deed, and not a will.*—A writing under seal, in form a deed, by which a father, in consideration of natural love and affection, conveyed to his daughter and her children, by present words of gift, several negroes and other personal property, contained this clause, "The condition of the above-named gift is to take place at my death; until then, the property is to remain as my own": *Held*, that the instrument was a deed, and not a will.
2. *Construction of deed of gift.*—A father conveyed certain negroes and other personal property, by deed of gift, to his "daughter Sarah, and to her children, the natural heirs of her body, at her death", "to have and to hold unto the said Sarah, her executors and administrators forever, as her and her children's property"; and the deed reserved the use and possession of the property to the donor during his life: *Held*, that the deed created a life estate in the said Sarah, with a *quasi* contingent remainder to such of her children as might be living at her death.
3. *Reversal on account of erroneous charge, notwithstanding deficiencies in plaintiff's proof.*—Where plaintiffs claim under a deed of gift, which the court errone-

ously holds to confer no title on them, and therefore charges the jury that, on all the evidence, they are not entitled to recover, the judgment will be reversed at their instance, although the bill of exceptions, while purporting to set out all the evidence, does not show that they proved their identity with the donees named in the deed.

APPEAL from the Circuit Court of Pickens.

Tried before the Hon. E. W. PETTUS.

This action was brought by the appellants, infants suing by their next friend, against John W. Mustin, to recover three slaves and some other articles of personal property, which the plaintiffs claimed under a deed of gift from their maternal grandfather, and which were held by the defendant as his administrator. On the trial of the cause, as the bill of exceptions states, the plaintiffs read to the jury, by consent, an agreement of counsel, in these words :

"We hereby agree to go to trial, in the above entitled cause, upon the construction of the paper writing purporting to be a deed of gift from Paul Walters to Sarah Elmore, wife of Charles Elmore, and to her children, as to the right of Elmore to recover, without regard to the character in which said Elmore sues; and any right which said Mustin has, as administrator of said Paul Walters, affecting his creditors, is hereby waived. And it is further admitted, that some of Mrs. Elmore's children were born before, and some after, the 30th day of April, 1845; and that she died before said Paul Walters, her father. It is further agreed, that Willison, a man about twenty-two or twenty-three years of age, is worth $850, and his hire $100 per year; Becky, about eighteen or twenty years old, worth $800, and hire worth $55 per year; Alfred, a boy nine or ten years old, worth $675, and hire worth $30 per year; that these slaves were all in the possession of the defendant at the time of bringing suit; that Alfred is the child of Becky, named in the deed; that Mary, another child of Becky's, about four years old, was given by the will of said Paul Walters to one of his daughters, named Susannah Williams; and that the above slaves went into the possession of the defendant, about 1st January, 1855, as administrator of said Paul Walters, and are so held by him."

The plaintiffs then read in evidence an instrument in writing, entitled "Deed of gift", which was in these words :

"Pickens County, ⎱  Know all men, by these presents,
       Alabama.   ⎰  that I, Paul Walters, of the said county
and State of Alabama, farmer, for and in consideration of the
natural love and affection which I bear unto my youngest
daughter, Sarah M. Elmore, wife of Charles Elmore, (and) in
consideration of the sum of one dollar to me in hand paid by
my said daughter, at and before the sealing and delivery
hereof, the receipt whereof I do hereby acknowledge, have
given, granted, bargained, and sold, and by these presents do
give, grant, bargain, and sell, unto my said daughter, Sarah
Elmore, the following named property, and to her children,
the natural heirs of her body, at her death—namely: One
negro man named Willison, likewise one negro woman named
Becky, and her child Alfred, likewise one cross-cut saw, one
large trunk, two yokes of steers, one new Jersey wagon, fifty
dollars in money, one rifle-gun, and shot-gun; to have and to
hold all and singular the above named property, hereby given
and granted, unto the said Sarah Elmore, my daughter, her
executors and administrators forever, as her and her child-
ren's property. The condition of the above named gift is to
take place at my death; until then, the property is to remain
as my own. In witness whereof, I have hereunto set my
hand and seal, this April 30th day, in the year of our Lord
1845."                                his
"Test: John D. Ballard, ⎱   "Paul ⋈ Walters. [L. s.]"
       John Carver."   ⎰   ·    mark.

This writing was admitted to record, in the proper office
in Pickens county, on the 9th June, 1845, on proof by one of
the subscribing witnesses of its execution; and the bill of ex-
ceptions states that it was admitted to have been duly execu-
ted, proven, and recorded.

" A paper, purporting to be the last will and testament of
said Paul Walters, was also, by agreement of counsel, ad-
mitted and read in evidence", which was dated October 8,
1852, and by which the testator, after devising and bequeath-
ing real and personal property to other children and grand-
children, gives his daughter Sarah two dollars. This will
also contained a bequest to Susannah Williams of a negro
child named Mary, and all the testator's stock of cattle,
"with the exception of the oxen gifted to Sarah Elmore";

and it was admitted to have been duly admitted to probate.

"This was all the testimony in the case; and upon this evidence the court charged the jury, that the writing executed by Paul Walters on the 30th day of April, 1845, and in evidence before them, was an executory devise, and not a deed; and that the plaintiffs, on all the proof, were not entitled to recover in this action." The plaintiffs excepted to this charge, and it is now assigned as error.

S. F. HALE, for the appellants, contended,—

1. That the instrument under which the plaintiffs below claimed is a deed in form, is called a deed by the maker, can operate as a deed, and was manifestly intended so to operate; and although the character of an instrument be equivocal, yet, if its execution is perfected by delivery, the courts, to prevent the maker's intention from being defeated, will hold it to be a deed.—Golding v. Golding, 24 Ala. 128.

2. That the deed gave Mrs. Elmore an estate for life, with remainder to her children living at her death, subject to the life estate of the grantor.—Williamson v. Mason, 23 Ala. 487.

E. W. PECK, contra, made the following points :

1. The alleged deed of gift was properly held a will.—Dunn and Wife v. Bank of Mobile, 2 Ala. 152; Shepherd v. Nabors, 6 ib. 631; Thompson v. Johnson, 19 ib. 59; Walker v. Jones, 23 ib. 448; Golding v. Golding, 24 ib. 122.

2. If said paper be held a deed, and not a will, it created an estate tail in Mrs. Elmore, which, by operation of the statute then in force (Clay's Digest, 157, § 37), was turned into a fee; and consequently the plaintiffs have no title.

3. But, if said paper, as a deed, created a life estate in Mrs. Elmore, with remainder to her children, the children in esse at the time of its execution took that remainder; and, since the action is brought jointly by the children born before and after the date of the deed, there can be no recovery. Therefore, the charge of the court, though grounded on a wrong reason, is correct.— Thomas v. Denton, 15 Ala. 583; Bell v. Hogan, 1 Stew. 536; Miller v. Eatman, 11 Ala. 609.

4. There is no evidence in the record that the plaintiffs are the children of Mrs. Elmore.

5. If the paper be held a deed, and be construed to create a life estate in the donor, remainder to his daughter for life, and remainder over to her children living at her death; or, if it be construed to create a life estate in the daughter, with remainder to her children living at her death, reserving the use and possession to the donor during his life,—in either case, the remainder over to the children can only be sustained as an executory devise.—2 Kent's Com. 352.

GOLDTHWAITE, C. J.—The first question is, whether the instrument made by Paul Walters, in 1845, is a deed or a will. If it was intended to pass a present interest, and has the other requisites essential to its operation as a deed, it will in law be so regarded; while, on the contrary, if the interest was entirely posthumous, then it is a will, if properly executed as such.—Adams v. Broughton, 13 Ala. 731; Golding v. Golding, 24 *ib.* 122; Jarman on Wills, 11. The present instrument is certainly very inartificially drawn; but we think it clear that it was intended by the maker to pass a present interest. This is shown by the language employed, which, in the concluding clause, is susceptible of no other construction. It is, indeed, as strong in this aspect as words can make it. The last clause reads as follows, "The condition of the above named gift is to take effect at my death; until then, the property is to remain as my own." By this, when taken in connection with the words which precede it, we understand that the operation of the gift, so far as possession was concerned, was to be postponed until the death of the donor, up to which time the property was to remain, not his own, but "*as*" his own. The word "as", in our opinion, is the qualifying word of the clause, and shows that the donor did not intend to hold the property absolutely up to the period to which he had postponed the enjoyment of the interest he had given. We cannot, on any other construction than the one we have given to this clause, reconcile it with the preceding part of the instrument, the words of which so evidently evince the intention to pass a present interest. The language of the condition or proviso is, at least, doubtful; and it would not be in accordance with sound rules of construction, to make the certain and definite yield to the

21

uncertain and doubtful. The interpretation we have given to the clause in question harmonizes with the other parts of the instrument, and makes it consistent as a whole.

We are aware that what was said by Collier, C. J., in Dunn v. Bank of Mobile, 2 Ala. 152, and the decision in Shepherd v. Nabors, 6 Ala. 631, are opposed to the conclusion to which we have arrived; but the result in the first case would have been the same, had the instrument been declared a will; and the authority of both is shaken, if not overruled, by the subsequent cases of Adams v. Broughton, *supra*, and Golding v. Golding, *supra*, both of which sustain the views we have expressed.

As to the interest conveyed : The donor virtually reserves to himself a life interest in the property; and, with this reservation, he gives it to Sarah M. Elmore, "and to her children, the natural heirs of her body, at her death." The interest of Mrs. Elmore is not, as has been urged, converted into an absolute gift, on the principle applicable to estates tail; for the word "children" is here explanatory, and restrictive of the words immediately following it, and presents a stronger case than Dunn v. Davis, 12 Ala. 135, where the gift was to the "heirs or children."

Sarah M. Elmore therefore taking but a life interest, the question then is, whether the remainder was to her children living at the time of the gift, or to her children living at her death. The gift, it is to be observed, is to Mrs. Sarah M. Elmore for life, and "to her children, the natural heirs of her body"; and we think that, by the terms "natural heirs of her body", taken in connection with the word "children", the donor intended to limit the gift to the children who were heirs; and, upon the principle, *nemo est hæres viventis*, the limitation could only extend to the children living at her death, thus giving to them a *quasi* contingent remainder, which we held in Williamson v. Mason, 23 Ala. 487, could be created in personal property by deed.

It is said, however, that inasmuch as the record shows there was no evidence that the plaintiffs below were the children of Sarah M. Elmore, they were not entitled to recover, and for that reason the case will not be reversed; we are inclined, however, to think that the written agreement

entered into by the counsel, and which appears of record, rested the case entirely upon the construction of the deed; but, had there been no such agreement, we are of opinion, that the ends of justice require a reversal. It is true that the court will not reverse, although an error has been committed, if it can clearly be seen that such error occasions no injury. Neither, as a general rule, will a judgment be reversed, when it is apparent, upon the whole record, that the plaintiff cannot recover. But neither of these rules can properly be extended to the case before us. Had the charge been rested solely on the deficiency of proof as to the character of the plaintiffs, a motion might have been made to offer the necessary evidence on this point, or for a new trial with a view to supply it thereafter. But with the decision of the court, as to the effect of the deed, either motion would have been entirely superfluous. The charge asserted a proposition, which was conclusive of the case in every aspect, and thus virtually forestalled the action of the plaintiffs as to mere deficiencies or omissions of proof, which the party might have remedied, had merely the general charge been given, that upon the evidence no recovery could be had. In this respect, the error, if we were to refuse to reverse, might result in irreparable injury.

Judgment reversed, and cause remanded.