## MOSSER *vs.* MOSSER'S EXECUTOR.

32    551
127    36

[CONTEST AS TO VALIDITY OF WILL.]

1. *Feme covert's power to make will.*—A married woman, owning a separate estate, whether created by contract or by statute, may dispose of it by will.
2. *Instrument held will, and not deed.*—A writing under seal, in form a deed of gift; executed by husband and wife; purporting to convey to their children, by the words "have given, granted, and bestowed, and, by these presents, do give, grant, and bestow," all the real and personal property composing the wife's separate estate, "under the following restrictions, reservations, and conditions;" reserving to the wife a life estate in all the property; and further providing, "that the foregoing gift is to take effect" at her death, that her husband is to be appointed her executor, and that he "shall keep the property together for two years for the benefit of the children, until all of the estate can be wound up, when the said gifts are to be distributed,"—is a will, and not a deed.
3. *Validity of will not affected by unnatural or inequitable disposition of property.* The fact that a will makes an "unnatural and inequitable disposition" of property does not, *per se*, destroy its validity, if executed by a person of sound and disposing mind and memory.
4. *Hearsay inadmissible as evidence.*—Dangerous illness, or the fact that a particular person was at the point of death, cannot be proved by general report in the village.
5. *Competency of testator's attorney as witness for will.*—An attorney-at-law, who was employed by a married woman to file a bill for a divorce and the removal of her husband from the control of her separate estate, and who holds her note for the amount of his fees, is a competent witness (Code, § 2302) to sustain the validity of a will, subsequently executed by her, disposing of all her separate estate, and attested by said attorney.
6. *Validity of will not affected by mistake.*—A "mistaken notion" on the part of the wife, that her husband intended to convert to his own use the property composing her separate estate, which induced her to make a will excluding him from all participation in her property, does not avoid such will.

APPEAL from the Probate Court of Pike.

IN the matter of the last will and testament of Mrs. Belinda Mosser, deceased, which was propounded for probate by Richard F. Cook, the executor therein named, and contested by Samuel Mosser, the husband of the decedent, on the following grounds: "1st, because said deceased, at the time, was not of sound and disposing mind and memory; 2d, because undue influences were used by others to procure said paper writing to be executed, con-

trary to previously expressed intentions; 3d, because said paper writing makes an unnatural and inequitable disposition of the property of the deceased; 4th, because said paper writing was procured by collusion and fraud; and, 5th, because said paper writing was not made and executed by the deceased according to the statute in such cases provided, and the same is not properly attested." The court sustained a demurrer to the third plea, or·specification, and issue was joined on the others.

On the trial before the jury, the contestant reserved the following exceptions to the rulings of the court:

"There was evidence tending to show, that the testatrix, at and before the signing of said supposed will, was in bad health; and for the purpose of showing that she was in very bad health, the contestant asked Wm. Moore, one of the subscribing witnesses to the will, if it was not the general report in the village where said deceased lived that she was at that time dangerously ill, or at the point of death. The proponent objected to this question, and the court sustained the objection; to which the contestant excepted.

"It was in evidence, also, that L. L. Cato, one of the witnesses, had been employed by the deceased, heretofore, and at the time of witnessing said will, to file two bills in equity for her against the contestant, one for divorce, and the other to remove him from the custody and management of her property, and gave him her note for $333 66; that said suits had both been decided against the deceased; and that she had no other property than that included in the will, over which the contestant had control. Under this state of facts, the contestant objected to the competency of said Cato as a witness to sustain the will, on the ground of interest; which objection was overruled by the court, and the contestant excepted.

"It was in evidence, also, that in June, 1854, the deceased and the contestant entered into a written agreement as to the disposition of her property in the event of her death before the contestant; by which agreement, all her separate estate was to be given to her children, the contestant was to be her executor, was to settle up the

estate in two years, and was to receive the usual fees; which paper was signed and sealed by both the deceased and the contestant, and attested by two witnesses," and was in these words:

·"The State of Alabama, ┐    Know all men, by these pres-
          Pike County.   ┘ ents, that we, Samuel Mosser and Belinda Mosser, his wife, have, this 13th day of June, A. D. 1854, for and in consideration of the natural love and affection which we have and bear for our children— to-wit, Eliza Thompkins, wife of William T. Thompkins, Alexander Gerald, Franklin Gerald, Lemuel Gerald, and Samuel Bird Mosser; also, for the further sum of one dollar, to us in hand paid, together with other good causes us thereunto moving, have, on the day and year above written, given, granted, and bestowed, and, by these presents, *doth* give, grant, and bestow unto our said children, the following described real and personal property," &c., "together with all the household furniture belonging to the said Belinda, money, and choses in action; to have and to hold said property unto their use and behoof forever, under the following restrictions, reservations, and conditions—viz., all the foregoing property, both real and personal, is to be held, owned, and enjoyed by the said Belinda, during her natural life, and at her death, the foregoing gift is to take effect, and the said property to vest in our said children equally," &c. "It is further by these presents distinctly understood, that the foregoing gift is not by any means to take effect until the death of the said Belinda, who reserves a life estate in all of the said property; nor is she to account in any manner for the rents, profits, or hire of the same. It is further understood, that the foregoing property is not to vest as before mentioned, upon the following named events—to-wit: If the said Belinda shall have further issue, said child hereafter to be born of her body (or children) is to receive such portion or portions of said property as she, the said Belinda, may select and set apart for such child or children; and then the remainder, or portion left, is to be divided amongst our children before named, as hereinbefore directed and contemplated; and further,

36

if they, the said Belinda and Samuel Mosser, shall in future desire to change their residence, nothing herein contained shall in any wise prevent them for selling and disposing of any or all of the real estate described, and vesting the proceeds in other property for the use and benefit of our heirs, as before contemplated. And it is further contemplated, that in the event of the death of the said Belinda Mosser, the said Samuel is to be appointed her executor, provided he complies with the law in giving bond; who shall keep all the property together for two years, for the benefit of the children, until all of her estate can be wound up, when the said gifts are to be distributed; and besides these restrictions and reservations, the foregoing gift of said property to our children is without incumbrance in any way whatever. In testimony whereof," &c.

"Under this state of proof, the contestant asked the court to instruct the jury, that if they believed from the evidence there was a written agreement between the deceased and the contestant, that the property of the decedent, as well as the marital interest of the contestant in that property, was to be disposed of in a particular way, different from that in the paper propounded for probate, then the deceased could not make a different disposition of said property, so as to affect the interest of the contestant, without his consent; which charge the court refused to give, and the contestant excepted.

"The contestant asked the court to charge the jury, also, that said paper writing of June, 1854, between the deceased and the contestant, was a contract between them as to the final disposition of the property of the deceased, and could not be changed by her, to the disadvantage of the contestant, without his consent. This charge the court refused to give, but instructed the jury, that the contestant had a perfect right, notwithstanding an agreement with the contestant, to make whatsoever disposition of her property she might see fit; to which charge, as well as to the refusal to charge as asked, the contestant excepted.

"It was in evidence, also, that the deceased instituted

proceedings in chancery against the contestant, in the early part of the year 1855, by two separate bills, one for a divorce, and the other to remove him from the custody and control of her property, on the ground that he was attempting to apply the same to his own use; and that both of said bills had been decided against her, she having wholly failed to sustain the allegations of either one of them by proof. Upon this state of facts, the contestant asked the court to charge the jury, that if they believed from the evidence that said will was made under a mistaken notion that the contestant intended to convert to his own use the property of the deceased, and that from such mistake she was induced to make a will by which the contestant was excluded, then they must find against the will; which charge the court refused to give, and the contestant excepted."

The sustaining of the demurrer to the third plea, and the other rulings of the court to which exceptions were reserved, as above stated, are now assigned as error.

Wm. P. & T. G. CHILTON, for appellant.

PUGH & BULLOCK, contra.

STONE, J.—The controlling question in this case hinges on the inquiry, whether the instrument bearing date June 30, 1854, is a deed or a will. The bill of exceptions states, in effect, that the property disposed of by that instrument was the separate estate of Mrs. Mosser. This being the case, unless said instrument operated a disability, she had the unquestioned right to dispose of such separate estate by will, whether it was created by contract, or by our statutes.—Wells v. Bransford, 28 Ala. 200; Code, § 1989.

[2.] We hold the instrument of June 30, 1854, to be a will, for the following reasons: 1st, said gift was, by its express terms, not to take effect, and said property was not to vest in the children, until her death; 2d, until that event, the property was to be held, owned and enjoyed by her; 3d, Mr. Mosser was, by the terms of the instrument, to be appointed her executor, was directed to keep the property together for two years after her death, "until

all of her estate can [could] be wound up, when the said gifts are [were] to be distributed." These provisions are clearly testamentary; and although there are some clauses in the writing, which, if they stood alone, would stamp its character as a deed, yet, when the entire instrument is considered, we think we carry out the intentions of the parties by pronouncing it a testamentary paper.—Habergham v. Vincent, 2 Vesey, Jr., 204; Allison v. Allison, 4 Hawks, 141, argument of counsel; Walker v. Jones, 23 Ala. 448; 1 Jar. on Wills, 11, 12; Elmore v. Mustin, 28 Ala. 309.

The instrument of June, 1854, being a will, it results that it was revocable. The will of January 25, 1855, if valid, expressly revoked the former one.

[3.] If Mrs. Mosser was of sound, disposing mind and memory, she had a clear right to dispose of her property as she pleased. If the disposition was even "unnatural and inequitable," that would not, *per se*, destroy the validity of the will. The demurrer was properly sustained.—See principles settled in Gilbert v. Gilbert, 22 Ala. 529.

[4.] As a general rule, facts only can be given in evidence to a jury. Dangerous illness, or that a particular person was at the point of death, cannot be proved by general report in the village.—1 Greenl. Ev. § 124; Corley v. The State, 28 Ala. 22.

[5.] We might, for the purposes of this case, concede that Mr. Cato was interested to establish this will. Interest in the event of a suit does not disqualify a witness, "unless the verdict and judgment would be evidence for him in another suit."—Code, § 2302.

[6.] The last charge asked, was correctly refused. Such "*mistaken notion*," as therein supposed, cannot have the effect of avoiding a will.—See Gilbert v. Gilbert, *supra*; 1 Jar. on Wills, (2 Am. ed.) 58–9.

The other rulings of the court were free from error, under the construction we have placed on the instrument of June, 1854.

Judgment of the probate court affirmed.