Lipscomb, J.
There is no bill of exceptions, but the’parties consented bj^ an agreement-on the record that the judge should make out a statement of facts after the adjournment of the court; and no exception is taken by the appellee to the want of a bill of exceptions, nor to the time when the judge’s statement was filed. But his counsel has in his brief treated the questions as presented by the statement as unexceptionable as to time and form. We have not had the beuefit of either argument or brief from the appellants.
The first two grounds assigned will scarcely need notice, as we have so often ruled that when there appears to be a conflict of testimony on the trial we will not reverse on (he ground that the motion for a new trial had been overruled by tlie court below.
On the third, it is only necessary to remark that unless the damages found are so excessive as to create a strong suspicion of improper motives influencing the jury in the verdict, it ought not to he set aside. Tlie evidence presented in tlie record would lead ns toBno such conclusion. It showed, if it was to be credited, great disregard to the peace and quiet to tlie plaiutiff’s family, as well as tlie ignominious arrest and deprivation of liberty to the plaintiff. A man’s home should be sacred; and nothing but the authority of the law should in any case excuse tlie violation of its sanctity. The jury, on hearing tlie evidence, were the best judges of the amount of damages to lie imposed on the violations of such inestimable rights; and their verdict does not carry with it any presumption that they were influenced by any improper or unworthy considerations.
The fourth, fifth, and sixth will be considered together; and we must resort to the statement of the judge to ascertain liow far the record sustains the points presented by the assignment of errors.
It appears from the fa'cts stated that a warrant had been placed in the hands of a special constable for tlie arrest of one Luke Presnell, on'“a charge of decoying a certain negro woman by the name of Matilda from the" possession or premises of William II. II. Barnette.” The justice at the same time issued a subpoena to the special constable, requiring him to summon the plaintiff Hicks and several other witnesses to appear before him forthwith, “to give evidence on the part of tlie State of Texas against Luke Presnell, in a certain action for decoying a negro woman.” The subpoena was offered by the defendants and read to the jury. The defendants offered to read to the jury the warrant for llie arrest of "Presnell. but it was objected to by the plaintiff and tlie objection sustained.
It can well bo perceived why the plaintiff should have objected to such evidence, because, if received, it neither amounted to a defense nor did it show anything in mitigation. It was not a defense, because the warrant, charged no offense known to the law. If it had been for enticing- away a negro woman slave-from her master or owner, it would have amounted to a felony. (Hart. Big-., art. 2030.) Or if it liad.been for harboring a negro woman slave of Win. II. II. Barnette, it would have been an offense known to our laws. (Hart. Dig., art. 2544.) But the chargif as contained in the warrant constituted no offense. And had Presnell, who was arrested under the warrant, brought suit against the justice of tlie peace, tlie constable and all who assisted the warrant would not liave afforded them any justification: (Hawkins v. Johnson, 3 Black. R., 46; Moore, v. Watts, 1 Breese 18; Burlingham v. Wyle, 2 Root R., 152; Duckworth v. Johnson, 7 Ala. R., 578.)
It might, however, void as tlie warrant was if tlie parties acted ill ignorance, believing.that it was a valid and legal warrant, have been received in mitigation of damages. But when this warrant is offered as evidence in a suit not by Presnell, who was named in it and against whom it issued, but in a suit by one *178 not named in it, so far from being a circumstance to mitigate and lessen th* damages it would justly be an aggravation. It would show that tlie legal pir cess or what was intended to be such, had been perverted and prosti tuted and made an instrument of oppression by depriving- a citizen of Ills liberty. There was no offer accompanying this warrant to prove, that the parties had been mistaken, and being authorized to arrest one man had arrested another. The warrant, then, under such circumstances, could neither afford a defense nor a mitigation of the arrest; and its being ruled out by the court furnishes tlié appellants no ground of complaint or for reversal.
The excluding the evidence offered by the defendants of having been summoned by tlie special deputy constable to assist in the arrest was rig-lit on the same principle. If the warrant had been for the arrest of the plaintiff, and tlie defendants had acted in obedience to what they believed to he its lega effect, it would have been admissible in mitigation of tlie damages; but tin only authority the special constable had, if it had been valid, was, not for lli< arrest of tlie plaintiff but for another man. They were therefore left withon tlie smallest shadow of excuse. The evidence is certainly strong, if not eon elusive, that, all of the defendants knew that there was no authority to arres; Hicks, tlie plaintiff; so far from it, they must have known that ho was to bi summoned as. a witness in behalf of the State against TTesnell, the person against whom the warrant was issued. It seems to have been the subject of discussion on tlie way. And some of tlie defendants, in the consultation, objected to going on, for the alleged ground that they had no authority, and asked what would be the consequence if Hicks were to shoot some of them. Asbell, the constable, proposed going back to get authority. S. Slade Barnette then replied that if his friends of Bin-lieac! Village would not go with him, lie would get others who would. For he would be damned if lie did not take them. ' The defendants then all went on towards Mr. Hicks’s. From this evidence it would seem that they were not governed by the constable in virtue of any supposed authority he might be clothed with, but were under tlie conduct, of one of tlie defendants, Mr. Barnette. It is unfortunate that they were influenced by their devotion to their village and tlieir excited leader. Hail the more moderate counsel prevailed it would have kept them all out of trouble.
Judgment affirmed.