R. O. W. McManus v. F. M. Wallis.

1. RULES OF COURT—STATEMENT OF FACTS.—Ordinarily, the interrogatories and answers of witnesses, and copies of papers used in evidence, should not be incorporated in the record, but the facts proved thereby, instead. The statutory rule prohibiting it lessens expense and expedites the disposition of causes. When this rule is departed from, in exceptional cases, the necessity for it should be made apparent in the record itself.

2. SAME.—When a statement of facts is made by the judge, instead of by counsel, and the record is needlessly incumbered by interrogatories and answers of witnesses, it constitutes no ground for dismissal of the cause.

3. SAME—PRACTICE.—It is the duty of the district judge before whom a cause is tried to conform to the rules of court in the preparation of the statement of facts, when counsel disagree. When such disagreement occurs, he should require each party to make his statement of facts, and present it, before the close of the term, in time to enable the judge to make a proper statement; and, if necessary, the call of the docket should be suspended until this is done.

4. PRACTICE—STATEMENT OF FACTS.—If either party fail to present to the presiding judge a statement of facts in proper time, the judge may, in a proper case, punish the party guilty in such appropriate manner as the facts warrant, without depriving his adversary of his legal right. If this cannot be done, the record should show the facts in this regard, that they may be understood in the Supreme Court.

5. BRIEFS—RULES OF COURT.—When the brief of appellant fails to sub-

join to each assignment of error or proposition relied upon for reversal of the judgment, a brief statement, in substance, of such proceedings contained in the record as are necessary to explain and support such assignment and propositions, without intermingling such statement with arguments, reasons, conclusions, and references, the appeal may be dismissed.

6. BRIEFS.—A brief should be so made as to enable the court to decide the case upon it, without reference to, or an examination of, the transcript.

7. STATEMENT OF FACTS.—The certificate to a statement of facts made by the judge before whom the cause was tried, should, when the statement of facts has been prepared by the judge, show upon its face that the attorneys had failed to agree. The presumption is, however, that the attorneys had failed to agree, when the statement of facts is made by the judge.

8. LIMITATION.—A petition was marked "filed on the 23d of May, 1876," on a cause of action barred by limitation on the 18th of May, 1876. On the 15th of May, 1876, the plaintiff deposited his petition with the late clerk of the court, there being no clerk, though the late clerk remained in charge of the office. On the evening of the same day, the plaintiff deposited his petition with the clerk-elect, who did not qualify as clerk until May 23, on which day he indorsed the petition as filed : *Held*, That the plaintiff complied with the spirit of the law in regard to filing his petition, and there was a sufficient commencement of suit to prevent the bar of the statute.

9. MALICIOUS PROSECUTION—EVIDENCE.—To entitle a plaintiff to a verdict in a case of malicious prosecution, he must show (1) that he had been prosecuted as charged, and that the prosecution was at an end ; (2) the falsehood of the alleged charge ; (3) the want of probable cause ; (4) malice in the prosecutor ; and (5) damage to the plaintiff occasioned by the prosecution.

10. SAME.—The indorsement of the defendant's name, in a case of malicious prosecution, as a witness, on the back of the instrument containing the charge, is a circumstance proper for the jury to consider, but not conclusive of the fact that the plaintiff had been examined before the grand jury.

11. SAME.—In malicious prosecution, it devolves on the plaintiff to establish the want of probable cause.

12. MALICIOUS PROSECUTION.—When the plaintiff is entitled to recover in a suit for malicious prosecution, exemplary damages may be awarded.

APPEAL from Liberty.    Tried below before the Hon. Edwin Hobby.

Suit for $20,000 damages, brought by F. M. Wallis against R. O. W. McManus, for alleged malicious prosecution. The petition avers that McManus, at the time United States deputy marshal, did, on the 28th of May, 1872, go before the grand jury of the United States District Court, at Galveston, Texas, and maliciously caused Wallis to be indicted for resisting the execution of process in the hands of McManus, as United States deputy marshal; that he was arrested under said indict-ment, and that on the 18th of May, 1875, the same was dismissed. The petition was marked "filed May 23, 1876." The first amended original petition, filed September 15, 1879, alleged that the original petition was taken to B. F. Cameron, former clerk of the District Court of Liberty county, and he requested to file it, and he refused to receive or file the same; that then appellee took the same to C. C. Chambers, who had been elected clerk of said court, and deposited the same with him, and that he failed to mark the same filed until the 23d of May, 1876, the day on which he qualified as such clerk.

Defendant answered: 1st. General demurrer; 2. Special exceptions, setting up the statute of limitation for one year; 3d. Plea of statute of limitation for one year. That appellee's pretended cause of action, if the same ever accrued, accrued more than two years next before the institution of this suit and next before the filing of the amended petition. Defendant also pleaded not guilty, and averred that appellee did attempt to prevent the execution of the laws of the United States in preventing R. O. W. McManus, deputy U. S. marshal, from discharging his duty as such officer; by advising Ellen McLean to resist the process of the court of the United States and he would protect her, and by advising Ellen McLean to go back on the Labadie tract of land after she had been dispossessed under legal process of the courts of the United States, and helping her to move back on the land. Appellant also filed a general denial, and claimed damages in reconvention.

There was a trial. Verdict and judgment for Wallis for $2,000 damages.

McManus testified as follows: "I never did go before the United States grand jury in my life, and was not before the United States grand jury on the 28th of May, 1872, when the bill was found against F. M. Wallis."

Appellee, after testifying that he was arrested and put under bond for his appearance at Galveston, testified as follows: "I went down to Galveston at the time required of me in my bond: I was there twenty-one days; I went to the United States district attorney several days, and insisted upon a trial, as I was guilty of no offense; he put me off from time to time, saying that R. O. W. McManus, who was his witness, was not present, and that he could not go to trial until he came down, and said there was no marshal to send for him. I then asked him to have Mr. C. C. Cox appointed U. S. deputy marshal, and I would get him to go after Mr. McManus, which he did. I then went and had attachment issued for R. O. W. McManus to testify for the government, in order to get a trial, and sent the marshal after him. Mr. R. O. W. McManus, when he got to Galveston, went to Mr. Baldwin, the United States district attorney, and had a conversation with him, when he came to me and told me the case would be dismissed. I then went to Mr. Baldwin, and he told me I could go home; that the case against me was frivolous, and he would have it dismissed. I then left for home. After I left my bond was forfeited, and in about six months after that I had another *capias* served on me by a Mr. Clayton, a U. S. deputy marshal, about a mile from Wallisville. He told me I must go on to Wallisville with him, so that we could get off on a steamboat for Galveston. I then went on to Wallisville with the marshal, and in Mr. Wooton's store, in presence of Mr. Wooton and Charley Brown, I met R. O. W. McManus, when I said to him: 'Mr. McManus, what does all this mean? I thought this thing was through with.' McManus said: 'You keep quiet and I will get you out of it.' I then asked him upon whose testimony I was indicted, and he said it was upon his testimony. I asked him if he went before the grand jury that found the bill. He said

he did, that he did it in a passion, and if I would keep still he would get me out of it."

Appellant testified: "I never told F. M. Wallis, or any one else, in my life, that I had gone before the grand jury of the United States and had him indicted.   *   *   *   I did say to Wallis, in Wooton's store, that I would get the case dismissed; but I did not say I went before the grand jury and had him indicted, or that the bill was found on my testimony."

No witness testified that appellant was before the United States grand jury on the 28th of May, 1872, when Wallis was indicted, or at any other time.

McManus was appointed deputy marshal about three weeks before May 15, 1872, and on that day, as such officer, dispossessed one Ellen McLean of a tract of land known as the Labadie tract, in Chambers county, near Wallisville, he having a writ of possession therefor from the United States court at Galveston, Texas.

Wallis testified that while he was sheriff of Chambers county, after Ellen McLean had been dispossessed of the Labadie tract of land by process of the United States court, he advised her to go back on the land, and got off his horse and let her ride it back to the place, and that he went with her on foot back to the house, and that Ellen McLean stayed on the place several months after that; that about three weeks after Ellen McLean went back on the place, appellee saw McManus and U. S. deputy marshal Cordua, in Wallisville; that he said to McManus, "I have bought two hundred acres of that Labadie land, and Ellen McLean can stay on it as long as she pleases"; that McManus told him to hush, for that was a U. S. deputy marshal with him, and if he was not careful the U. S. marshal might jug him; that appellee replied he did not know whether he was a U. S. deputy marshal or not, and if he was he did not ask him any odds, or words to that effect.

Two or three days after appellee advised Ellen McLean to move back on the Labadie land, appellee and appellant met, and the seeming difference between them about appellee's

interfering with the U. S. deputy marshal's duties was, after explanations, amicably settled, and thought no more about. After this, appellant wrote to the U. S. marshal an account of what had happened.

The names of Cordua and McManus were on the indictment as witnesses.

On a motion to dismiss the appeal, the following opinion was delivered:

MOORE, CHIEF JUSTICE.—The first ground of this motion is, that the bond given by appellant is not for an amount sufficient to support the appeal.

Judgment against appellant was rendered October 4, 1879, for $2,000, with interest at eight per cent. The bond was executed October 24, 1879. The cost which had previous to that time accrued, amounted to $58.70. The bond is required to be in a sum at least double the amount of the judgment, interest, and costs. (Rev. Stats., art. 1404.) The bond is for the sum of $4,200, and seems to us to fully and fairly comply with this requirement of the statute.

The complaint made of the manner in which the transcript is prepared, appears to be sustained by an inspection of the transcript. The statement of facts certainly embodies the interrogatories and answers of the witness and copies of papers read in evidence on the trial, instead of merely setting forth the facts proved thereby, as required by the rules prescribed by this court. (Dist. Ct. Rules 71, 75.) But appellee's complaint would be entitled to more consideration if it was shown that this defect in the transcript was brought by appellant, and without blame on his part. The statement of facts was made by the presiding judge. Appellants can only get the benefit of their appeals in many particulars by incorporating a statement of facts in the transcript. When the judge makes this statement, the parties are bound to accept it as made, whatever may be the manner in which it is done.

The rules upon this subject are, in our opinion, salutary, less-

ening the expense, and tending to a more speedy determination of cases in this court by avoiding an unnecessary waste of time and labor. There may, however, and no doubt will, arise cases where it may be necessary, for the proper appreciation and understanding of the questions presented in the record, for the interrogatories and answers of witnesses, or copies of papers read in evidence, to be seen and considered by the court, and where it may be necessary to depart from the general rule prescribed by the court as to the manner of making up the statement of facts. Where this is the case, the necessity for it should be made apparent in the record; otherwise, whether the statement is made by the court or by counsel, the rules should be fully and fairly followed and observed;—for in all matters of judicial action to which they are applicable, it is the duty of the judge to conform to them himself, as well as to require the observance of them by counsel.

We must presume that the presiding judge made up the statement in this case, because counsel had failed to agree, and this most probably near the close of the term, when he did not have sufficient time to make a statement in conformity with the rules. We think, however, he should not have allowed himself to be placed in such a position, but should, in all instances where notice of appeal is given, require a statement of facts to be agreed upon and presented to him for approval without delay; and where the parties do not agree, each of them should be required to make a statement within a sufficient length of time before the end of the term to enable him to make a proper statement. When necessary, the call of the docket should be stopped, so this could be done; for it is much better that the court should conform to law in the business transacted, than to get through with much more in an imperfect and unsatisfactory manner, by reason of haste and want of time in which it is transacted.

It will seldom happen that a statement of facts is improperly made by the court when the counsel for both parties have performed their duty in cases where they fail to agree. If either

of them fails to present a statement in proper time, the judge should obviate such neglect, or punish the party guilty of it in such appropriate manner as the facts warrant, without depriving the party not in fault of his legal right; and where this cannot be done, he should cause the record to show the facts, so as to enable this court to act understandingly in the premises.

In this case, we cannot see that the improper preparation of the statement of facts is in any way attributable to appellant, or if he is in fault in respect to it, that appellee may not be equally so. The motion cannot, therefore, be sustained on this ground. If we could, we might feel warranted in dismissing the appeal.

The objection to the form and manner of appellant's brief is well taken. It does not conform to the rules upon this subject. It does not subjoin to each assignment of error or proposition relied upon for reversal of the judgment, a brief statement in substance of such proceedings contained in the record as are necessary to explain and support such assignment and propositions, without intermingling such statement with arguments, reasons, conclusions, and references. The brief as made is not such as to enable the court to decide the case upon it without reference to or an examination of the transcript. For this objection the court might, in its discretion, dismiss the appeal, or refer the case back to counsel to file another brief in conformity with the rules, and this, we think, should be done.

It is therefore ordered that appellee's motion to dismiss this appeal be overruled; that appellant's brief heretofore filed be set aside, and that he be required, within three days, to file a brief in conformity with the rules of this court; and that the cost of this motion be taxed against him.

Motion overruled.

[Opinion delivered January 27, 1880.]

*E. B. Pickett*, for appellant.

I. The plaintiff cannot recover without proving that defendant prosecuted him criminally, and did it maliciously and without probable cause, and that the prosecution has ended, and that he has been damaged thereby. (Griffin *v.* Chubb, 7 Tex., 614; 1 Greenl. on Ev., sec. 449.)

II. The oral admissions of defendant, if any, are not the best evidence that he appeared before the U. S. grand jury and caused plaintiff to be indicted; and his (plaintiff's) failure to procure such evidence, if any, raises the legal presumption that, had such evidence been offered, it would have been unfavorable to plaintiff. (Cheatham *v.* Riddle, 8 Tex., 167; 1 Greenl. on Ev., sec. 37; 1 Phil. on Ev., Cow. & Hill's Notes, pp. 456–473; Mordecai *v.* Beal, 8 Port., 529; Page *v.* Arnim, 29 Tex., 72; Scoby *v.* Sweatt, 28 Tex., 730.)

III. This court will reverse when the verdict is without evidence, or when it is clear the verdict is wrong, or when the overwhelming weight of evidence is against it.

The verdict of the jury is assigned as error, because said verdict is contrary to the following charge of the court given to the jury and the evidence in the case: "But if you do not believe that defendant went, as alleged, before the grand jury of said court and instituted said criminal prosecution alleged in the petition, then you will find for the defendant." There was not one particle of proof that defendant, now appellant, was before the grand jury. (Smelser *v.* The State, 31 Tex., 95; Green *v.* Hill, 4 Tex., 465; Long *v.* Steiger's Administrator, 8 Tex., 462; Ector *v.* Wiggins, 30 Tex., 57; Montalvo *v.* The State, 31 Tex., 63; Aspley *v.* Thomas, 17 Tex., 226; Taylor *v.* Ashley, 15 Tex., 51.)

IV. A vacancy in the office of district clerk does not interrupt the running of the statute of limitation. (Baines *v.* Williams, 3 Ired. Law, 481; Tyson *v.* Britton, 6 Tex., 222; Cole *v.* Runnells, 6 Tex., 272; Howell *v.* Hair, 15 Ala., 194; Dozier *v.* Ellis, 28 Miss., (6 Cush.,) 730; Pryor *v.* Ryburn, 16 Ark., 671.)

*Davis & Sayles*, for appellee.

I. The record does not contain a legal statement of facts. The caption of what purports to be a statement of facts reads as follows: "F. M. Wallace *v.* R. O. W. McManus. Statement of facts in the above-styled and numbered suit of F. M. Wallis *v.* R. O. W. McManus, for malicious prosecution. Be it remembered, that on the trial of the above-styled and numbered cause the following testimony was adduced: Plaintiff's testimony." Then follows what purports to have been the plaintiff's testimony; afterwards comes what purports to be defendant's testimony. The following is annexed to the foregoing: "The above statement of facts is approved as a substantial statement of the facts in evidence on the above trial.—EDWIN HOBBY, judge thirty-first district." (Rev. Stat., arts. 1377, 1378; Lacey *v.* Ashe, 21 Tex., 396; Dewees *v.* Hudgeons, 1 Tex., 192; Teas *v.* McDonald, 13 Tex., 356; Keef *v.* The State, 44 Tex., 583; Tardiff *v.* The State, 23 Tex., 171; Johnson *v.* Blount, 48 Tex., 41.)

II. The pleadings of the plaintiff support the verdict of the jury and the judgment of the court. (Linn *v.* Montross, 5 Tex., 511; Hall *v.* Jackson, 3 Tex., 305; Ellis *v.* McKinley, 33 Tex., 676; Kindred *v.* The State, 32 Tex., 609; Teas *v.* McDonald, 13 Tex., 355; Birge *v.* Wanhop, 23 Tex., 441; Armstrong *v.* Lipscomb, 11 Tex., 651.)

III. There was evidence that the appellant prosecuted the appellee criminally. (Paschal's Dig., art. 2855; 2 Greenl. on Ev., 2d ed., sec. 450; Briscoe *v.* Bronaugh, 1 Tex., 340; Carter *v.* Carter, 5 Tex., 102; Ables *v.* Donley, 8 Tex., 331; Stroud *v.* Springfield, 28 Tex., 676.)

IV. The evidence shows that the prosecution was from an improper motive and that the appellee is entitled to vindictive damages. (Gabel *v.* Weisensee, 49 Tex., 131; McGehee *v.* Shafer, 9 Tex., 23; Barnette *v.* Hicks, 6 Tex., 352; Smith *v.* Sherwood, 2 Tex., 460.)

BONNER, ASSOCIATE JUSTICE.—We are met on the threshold of this case with the objection, on the part of appellee, Wallis,

that there is no such proper statement of facts in the record as would authorize this court to consider the same.

The caption of what purports to be a statement of facts reads as follows: "F. M. Wallis *v.* R. O. W. McManus. Statement of facts in the above-styled and numbered suit of F. M. Wallis *v.* R. O. W. McManus, for malicious prosecution. Be it remembered, that on the trial of the above-styled and numbered cause, the following testimony was adduced: Plaintiff's testimony." Then follows what purports to have been the plaintiff's testimony; afterwards comes what purports to be defendant's testimony. To this is annexed: "The above statement of facts is approved as a substantial statement of the facts in evidence on the above trial.—EDWIN HOBBY, judge thirty-first district."

It is insisted that the form of approval by the learned judge presiding applies to article 1377 of the Revised Statutes, where the statement is made by the attorneys and approved by the court; and not to article 1378, where the statement is made by the presiding judge alone.

It is certainly the better practice in such cases that the certificate of the presiding judge should show affirmatively that the contingency had happened—that the attorneys had failed to agree—which would require him to make out the statement. It was, however, held by repeated decisions of this court, under the former statute, (Paschal's Dig., art. 1490,) substantially the same as that now in force, that if the statement be made by the judge alone, it will be presumed that this was done because the attorneys had failed to agree. (Harlan's Heirs *v.* Haynie, 9 Tex., 459; Kelso *v.* Townsend, 13 Tex., 140.)

Under the authority of the above cases, we are of opinion that the statement of facts is sufficient.

The appellant, McManus, in argument, mainly relies upon two grounds for reversal of the judgment below: first, that the action was barred by the statute of limitation of one year; second, that the testimony was not sufficient to sustain the verdict.

I. The action would have been barred on May 18, 1876; the file-mark on the petition bears date May 23, 1876.

The testimony shows that on May 15, 1876, plaintiff, Wallis, deposited his petition with Cameron, the late district clerk, who, on April 29, 1876, had been appointed county clerk, and had that day qualified as such. The testimony tended to prove that Cameron, though he had been appointed to the office of county clerk, and had qualified as such, seemed still to have had charge of the office of district clerk; that he refused upon consideration to file the petition, and that subsequently, on the evening of the same day, it was handed by plaintiff to Chambers, who had been elected to the office of district clerk, but who did not qualify as such until May 23 thereafter, and by whom the petition was that day indorsed filed. The testimony further tended to prove that from May 15 to May 18 it was impracticable to have had a clerk *pro tem.* appointed by the district judge.

It was evidently the intention of the framers of the Constitution of 1876 that there should not have been a hiatus in office, caused by the change of officers under the new Constitution. (Ordinance submitting the new Constitution of 1876 to vote, &c.)

Under the circumstances, we think that the plaintiff, Wallis, complied with the spirit of the law in regard to the filing of his petition, and that there was a sufficient commencement of his suit to prevent the bar of the statute. (Const. of 1876, art. 1, sec. 13.)

II. The second ground urged for a reversal of the judgment was, that the testimony was not sufficient to sustain the verdict.

To have entitled plaintiff to a verdict, he should have shown by satisfactory evidence—

1. That he had been prosecuted as charged, and that the prosecution was at an end.

2. The falsehood of the alleged charge.

3. The want of probable cause.

4. Malice in the prosecutor.

35

5. Damage to him occasioned by the prosecution. (2 Cooley's Black., 2d ed., p. 125, note 13; 2 Greenl. Ev., sec. 449.)

To the support of the charge of prosecution by defendant, McManus, a copy of the indictment was introduced, with his name indorsed thereon as a witness.

Although this was a circumstance proper for the consideration of the jury, it was by no means a conclusive one, as the indorsement is not made by the witness himself, and in practice is frequently made upon mere information or belief that the party whose name is thus indorsed may know facts material to the prosecution, though he had not in person been before the grand jury.

From the nature of the charge in this indictment, appellant, McManus, would ordinarily have been considered a material witness on the trial, though the indictment, in fact, may have been found upon the testimony of others.

The only other evidence, as shown by the record, which tended materially to prove that the appellant, McManus, may have been before the grand jury, were his alleged admissions to that effect, made several years before the trial, in a conversation with appellee, Wallis, as testified to by him.

Appellant, McManus, swears positively that he never made such admissions, and further, that the indictment was not found upon his testimony, and that he never was before that or any other grand jury of the United States.

The case on this issue does not seem to have been fully developed on either side, as the parties themselves only testified, when it would reasonably appear that other and additional testimony could have been procured.

The subsequent actions of McManus after the arrest was made, as testified to by Wallis himself, would, upon the issue of malice, seem to be inconsistent with the theory that he entertained malice towards Wallis.

Although the want of probable cause was a negative issue, it nevertheless devolved upon the plaintiff, Wallis, to establish it.

It was not a necessary justification to McManus that legal probable cause should, in fact, have existed. The question on this issue was, not whether Wallis was actually guilty as charged, but whether McManus had reasonable grounds, from the facts known to him and the communications made to him, to believe, and did actually believe, that Wallis was thus guilty. (Munns v. Dupont, 3 Wash. C. C., 31; 1 Am. Lead. Cas., 224; Landa v. Obert, 45 Tex., 543.)

Without intending to intimate that the testimony shows a case of probable cause, it may be said that it tends to prove that Wallis assisted Mrs. McLean to return to the premises after she had been dispossessed, and that he, upon her statement of the facts, said that she had been illegally dispossessed.

The efforts of public officers in the proper discharge of their duties being for the public good, should be fearlessly upheld; and although prosecutions against them should be had for a willful or corrupt violation of their obligation, yet, as this has a tendency to embarrass them in the free discharge of official duty, such prosecutions should not be encouraged unless upon satisfactory evidence.

A suit for malicious prosecution so far partakes of the nature of a criminal proceeding as to admit of the recovery of exemplary damages in the nature of a penalty.

Considering the character of this suit, all the facts and circumstances of the case, and that the burden of proof was upon plaintiff, Wallis, we are of opinion that he so failed to sustain, by clear and satisfactory evidence, the material allegations in his petition, as to have required that, upon this ground, the court below should have granted a new trial; and that for the error in overruling the same, the judgment should be reversed and the cause remanded.

REVERSED AND REMANDED.