### P. J. WILLIS & BRO. AND WILLIAM KATTNER v. VIRGINIA B. SMITH ET AL.

#### Decided December 15, 1897.

**1. Statement of Facts—Delay in Filing Excused.**

Where a statement of facts was filed too late, but reasonable excuse was shown for delay, the action of the trial court in approving it and refusing to strike it from the record will be approved and the statement considered.

**2. Agreed Statement of Facts—Party Not Assenting.**

A statement approved by the trial judge as one agreed to by the parties, and not as one made up by him on disagreement, will not be considered on the appeal of a party who did not sign or agree to it, but may be stricken out as to him.

**3. Bill of Exceptions—When Filed.**

Objection to the introduction of deeds can not be considered where the bills of exception were filed after the adjournment of the term.

**4. Corporation—Warranty—Evidence.**

In the absence of a plea denying the existence of a corporation, sued as such under the name of P. J. W. & Bro., for breach of warranty in conveyance of land, a deed by P. J. W. & Bro. "incorporated" is sufficient proof of the covenant.

**5. Assignment of Error.**

An assignment of error complaining of a recovery for breach of warranty of title because the land recovered from the warrantee is not that to which title was warranted, is not supported by showing that the deeds of the adverse parties, on which they had judgment for the land covered by the covenant of warranty, did not identify the land therein conveyed as the same to which title was warranted.

ERROR to Coryell. Tried below before Hon. J. S. STRAUGHAN.

The opinion of the Supreme Court on writ of error herein from the judgment first rendered is found in 90 Texas, 635.

*S. B. Hawkins,* for plaintiff in error William Kattner.

*White & Mings* and *Eugene Williams,* for plaintiffs in error P. J. Willis & Bro.

*S. P. Saddler,* for defendant in error Hawkins.

*H. N. Atkinson,* for defendants in error Smith et al.

COLLARD, ASSOCIATE JUSTICE.—This suit was originally brought December 28, 1893, amended by third amended petition January 22,

1895, by plaintiff in error William Kattner, against Virginia B. Smith, her husband H. C. Smith, F. Dewald, Annie P. Harris, a feme sole, Rebecca P. Harris, a feme sole, Lillie B. Fisher and her husband Walter P. Fisher, Cora L. Davenport and her husband Wharton Davenport, and John W. Harris, to recover land described in the petition as follows: "Out of the J. A. Wells survey, begin in the south boundary line of same, at a point S. 71 E. 1400 vrs. from J. A. Wells' S. W. corner, a pile of rock known as the S. E. corner of Bennett land. Thence N. 19 E. 1603 vrs.; thence S. 71 E. 1127 vrs.; thence S. 19 W. 1603 vrs., south line of Wells survey; thence N. 71 W. 1127 vrs. to the beginning," 319 7-10 acres.

P. J. Willis & Bro., a corporation, is sued as warrantor, to recover against it the value of so much of the land as he may fail to recover.

The petition sets up title acquired by plaintiff Kattner as follows:

1. Patent by the State to John W. Harris, assignee of J. A. Wells.

2. Deed from John W. Harris to D. C. McCormick.

3. Deed from D. C. McCormick to plaintiff.

4. Power of attorney from D. C. McCormick to W. G. McCormick.

5. Deed from D. C. McCormick by W. G. McCormick as attorney to H. C. Smith.

6. Judgment of County Court of Bell County in favor of P. J. Willis & Bro. v. H. C. Smith, dated September 20, 1882.

7. Execution, levy, and sale by virtue of and on said judgment; execution dated the 30th day of May, 1883, issued out of said above named court to Coryell County.

8. Deed of H. C. Smith by J. M. Lanham, sheriff of Coryell County, by virtue of above judgment, execution, levy, and sale to P. J. Willis & Bro., dated August 4, 1883.

4. Deed from P. J. Willis & Bro. to plaintiff, dated October 17, 1891.

10. Deed from P. J. Willis & Bro., dated December 3, 1891.

11. And, solely for the purpose of common source, plaintiff shows he relies on a deed from H. C. Smith to Virginia B. Smith, dated 29th of March, 1881.

12. As to the land claimed by F. Dewald and Eula Nall et al., plaintiff shows that he also relies upon a parol partition and agreement between H. C. Smith and H. R. Bennett and said Eula Nall et al., said Bennett being the ancestor of Eula Nall et al., and owning a tract of land adjoining this tract on the west, said agreement having been made fixing the boundary line between the two tracts "giving to H. C. Smith, then the owner of the land claimed by plaintiff, the line set out in plaintiff's petition, and by said agreement, the said Eula Nall et al. are estopped from claiming the 34 acres of land set out in their original answer filed January 16, 1894."

Plaintiff alleges that, although he is the legal and equitable owner of the said land, defendant Virginia B. Smith is fraudulently claiming it under a deed executed by H. C. Smith to her, recorded in volume 0, page 718, deed records of Coryell County, which deed is a cloud upon

plaintiff's title to the land, which is alleged to be his homestead, he being the head of a family, and residing thereon; that while said deed is too vague and indefinite to include plaintiff's land, the claim of ownership of the land made by defendant (Mrs. Smith) causes the injuries complained of.

It is also alleged that plaintiff acquired the land without notice, actual or constructive, of Virginia B. Smith's claim to the same, paying a valuable consideration therefor, to wit, $1600; that at the time of the execution of said deed of H. C. Smith to Virginia B. Smith he was notoriously insolvent, as was known to Virginia B. Smith, and the said conveyance was made to hinder, delay, and defraud the creditors of H. C. Smith, especially P. J. Willis & Bro., as said Virginia B. Smith, wife of H. C. Smith, well knew, and it was without consideration and is void; and further, that she took the land to hold for the benefit of H. C. Smith.

That on October 17, 1891, P. J. Willis & Bro. executed to plaintiff a deed conveying the land for $1600 then paid them by plaintiff, and that P. J. Willis & Bro. covenanted to warrant and forever defend the title to the land conveyed unto plaintiff, his heirs and assigns; that defendant P. J. Willis & Bro. became an incorporation, being before a partnership doing business in Galveston, Texas; that the members of the partnership became the promoters of the defendant corporation and owner of all the assets of the partnership; that the partnership was, at the date of the incorporation, the owner of the land, and the corporation became the owner of the land described; that the defendant corporation represented to him, the plaintiff, at the date of his purchase, that it was the owner of the land, and that it was free and clear of all incumbrance; that he is ignorant and unlearned, and he purchased the land relying on such representations, and paid the full purchase price of the same; that the deed to him was signed by P. J. Willis & Bro., but was acknowledged by ——— Willis, a member of the firm of P. J. Willis & Bro., he being fully authorized by the firm to so convey for the benefit of defendant; that P. J. Willis & Bro., defendant, recognizing their liability to plaintiff, on the 3d day of December, 1894, executed and delivered to him their deed in writing conveying the land to plaintiff, with general covenant of warranty of title; that notwithstanding his deeds as described, he has been ejected from the land by defendants, and his title is clouded by the deed to Virginia B. Smith under which she is claiming title to the land. Prayer to remove cloud, that P. J. Willis & Bro. be required to defend his title and possession, and for judgment against it on its warranty for the value of the land he fails to recover. Prayer for judgment against all the defendants for the premises, and that the deed of Virginia B. Smith be canceled.

On the 6th day of August, 1895, A. S. Hawkins filed his petition of intervention, claiming the land in controversy, and asked judgment therefor.

On January 16, 1894, Eula Nall and the other heirs of Bennett an-

swered, alleging that they had sold to F. Dewald, one of the defendants, 148 acres of the land, and warranted the title, and that 34 acres of the land conveyed were included in the land sued for, and asked that they be allowed to appear and defend their warranty, disclaiming all the land except the 34 acres; that at the time of the sale to Dewald, Kattner and defendant Dewald claimed the 34 acres of the 148 acres, and it was agreed by defendants Nall and Dewald that the balance of the purchase money, $300, of the land sold, should be deposited in the Belton National Bank until the question of title was determined in favor of defendants, when the same should be paid by Dewald. They then set up what they alleged to be the true division line, and asked judgment against Dewald for the balance of the purchase money, $300, with foreclosure of vendor's lien.

Defendants Harris and others answered, July 25, 1895, pleading general denial, not guilty, and disclaimed all the land except such as lay north of a line drawn from the southwest corner of the D. D. Thompson survey, running parallel with the south line of the J. A. Wells survey, and asked to be discharged with their costs.

On July 30, 1895, defendants Virginia B. Smith and her husband H. C. Smith amended their original answer, pleading general demurrer, not guilty, and specially, that Smith purchased the land of McCormick about July 27, 1878, it being the intention of McCormick to sell and Smith to purchase the land in controversy; that afterwards, on the 29th day of March, 1881, Smith being indebted to his wife Virginia B., conveyed the land to her to pay such debt, and they deny that the conveyance was to defraud creditors; and further, the answer denies that plaintiff Kattner is an innocent purchaser, but that when he purchased the land he had notice by the record of the deed of Smith to his wife, and that he had knowledge of the conveyance, and purchased in defiance of the rights of defendant Virginia B. Smith; and further answered, that Smith had no title to the land at the time of the sale under the execution of P. J. Willis & Bro., and that the proceedings under the same were void.

Defendant Virginia B. Smith, in reconvention, prays that as she has had and held the title since the 29th of March, 1881, the claim of plaintiff Kattner is a cloud upon her title; and that, if in the conveyance of McCormick to Smith and of Smith to her there be uncertainty of description, said deeds be reformed so as to embrace the land in controversy, as was the intention of the parties thereto at the time the deeds were executed, and that she have judgment for the land quieting her title.

Defendant Kattner filed a supplemental petition on the 10th day of August, 1895, answering the cross-bill of Virginia B. Smith and the intervention of Nall and others, and pleads not guilty, adverse possession in good faith and claim for valuable improvements, and a bona fide claim of title, setting up the links in the chain of title. He prays for judgment for value of his improvements.

August 13, 1895, the cause having been submitted to the trial judge without a jury, a judgment was rendered in favor of Annie P. Harris, John W. Harris, Rebecca P. Harris, Lillie B. Fisher, Walter P. Fisher, Cora L. Davenport, and Wharton Davenport, heirs of J. W. Harris, that they recover, from the parties to the suit, title and possession of that portion of the Wells survey lying north of the south line of the D. D. Thompson 160 acres survey, extended south 71 E. to intersect the original east line of the James A. Wells survey; and that the said line be established as the north line of the tract conveyed by J. W. Harris to D. C. McCormick by deed dated February 10, 1875, referring to the record of deeds of Coryell County for the Harris deed to D. C. McCormick; the amount of land so recovered by the Harris heirs found to be 90 acres, for which they were awarded their writ of possession.

Judgment was also rendered for Virginia B. Smith, joined by her husband H. C. Smith, against William Kattner and defendants F. Dewald and his warrantors, Eula Nall, J. P. Nall, C. G. Bennett, Addie Bennett, and against all other parties to the suit as her separate estate, for title and possession of all that portion of the James A. Wells survey beginning at the division line as above established between Harris' and McCormick, at a point 450 vrs. S. 71 E. from the S. E. corner of the D. D. Thompson 160- acre survey, for the N. W. corner of this survey; thence S. 71 E. along said line as above established, 1575 vrs. to corner; thence S. 19 W. 1153 vrs. to the South line of James A. Wells survey for corner; thence N. 71 W. with said James A. Wells south line 1575 vrs. to corner, the same being the S. E. corner of the Bennett tract; thence N. 19 E. with the east line of the Bennett tract 1153 vrs. to the beginning, containing 320 acres of land; and writ of possession was awarded her for all of said land on which William Kattner has not made his improvements in good faith, as afterwards set forth.

It is also adjudged that the last line above described be established as the division line between the land sold by D. C. McCormick to H. R. Bennett by deed dated May 11, 1876, and the land sold by McCormick to H. C. Smith by deed dated July 27, 1878.

It is further adjudged that P. J. Willis & Bro., a corporation, has heretofore executed a deed to plaintiff Kattner set out in plaintiff's third amended original petition, with full covenants of warranty, for which Kattner has heretofore paid P. J. Willis & Bro. the sum of $1600, and which warranty has failed; it was adjudged that plaintiff William Kattner recover from P. J. Willis and Bro., a corporation, the sum of $1600, with interest thereon from date at the rate of 6 per cent per annum.

It was further decreed that intervener A. S. Hawkins recover from all the parties the title and possession of that part of the J. A. Wells survey lying south of the line herein established between the McCormick tract and the Harris tract, lying east of the land recovered herein by Virginia B. Smith, which land, so recovered by the intervener, is estimated to contain about 111 acres, with field notes as follows: "Begin at the S. E. corner of the J. A. Wells original survey; thence N. 19 E. 1153 vrs. to the

Harris corner; thence N. 71 W. —— vrs. to the N. E. corner of the tract herein recovered by Virginia B. Smith; thence S. 19 W. with said Smith east line to the S. E. corner of said tract, on the south line of the said Wells survey; thence S. 71 E. to the beginning;" and Hawkins was awarded his writ of possession against all the parties.

It was further adjudged that plaintiff Kattner had made valuable improvements in good faith to the value of $1280, which were adjudged, as between him and Virginia B. Smith, as prescribed by statute; and writ of possession awarded to her in case she paid in one year for the improvements the sum allowed. Other improvements of Kattner made on the land were adjusted between him and Mrs. Smith.

The matter in controversy between defendants Eula Nall, J. P. Nall, C. G. and Addie Bennett, on their warranty deed to their codefendant F. Dewald, was also adjudicated, the court finding that the warranty to 34 acres of the 148 acres conveyed by the deed had failed.

It was also adjudged that plaintiff Kattner recover from P. J. Willis & Bro. costs incurred by reason of the suit on his warranty, and that he also recover of F. Dewald the costs incurred by reason of the suit against him, and that other parties recover their costs against plaintiff Kattner.

P. J. Willis & Bro. and William Kattner have brought the case to this court by writs of error. P. J. Willis & Bro. only has assigned errors.

On the 29th of January, 1896, upon motion of Virginia B. Smith, this court struck out the statement of facts in the case, upon the ground that it was not filed in the court below until more than thirty days after adjournment of the court. Then, on December 16, 1896, this court, not considering the statement of facts, affirmed the judgment of the lower court, the cause having been in this court submitted October 7, 1896. April 26, 1897, the Supreme Court reversed the judgment of this court striking out the statement of facts, and remanded the cause to this court for further proceedings by mandate issued the 20th of October, 1897. October 23, 1897, Virginia B. Smith filed another motion in this court to strike out the statement of facts, based upon the action of the district court in a proceeding instituted by Virginia B. Smith and A. S. Hawkins to strike out the statement of facts in the lower court, which motion was overruled by the lower court, that court holding that the file mark on the statement, as originally made by the clerk, as of the 15th of August, 1895, was incorrect, and that it was really filed on September 17, 1895, and directing that the file mark be accordingly corrected. Peter J. Willis & Bro. excepted to the order of the court.

We refer to the record of the proceeding referred to as filed in this court October 23, 1897, together with the testimony offered for and against the motion in the lower court, and make the same a part of this statement. The testimony on this proceeding showed that the statement of facts had been made out and forwarded by mail to the presiding judge in time to have reached him and be returned by mail to Coryell County before the expiration of the time in which it by law should have been filed, but the judge was away from home on a trip, and the state-

ment of facts did not reach him by mail until court had met in another county, where he received and approved the same, and forwarded it to the clerk of the District Court of Coryell County. The clerk received it on the 17th of September, 1895, and filed it as of the 15th day of August, instead of the 17th of September.

*Opinion.*—We can see no good reason why the action of the lower court on the motion should be reversed. A good excuse was shown for the delay in not having the statement deposited with the clerk earlier than it was. We believe also that the court did not err in having the file date of the statement corrected, and we approve the action of that court.

According to the law, as declared by the Supreme Court on review of the judgment of this court in the case, we have no jurisdiction solely upon a motion made here to review the approval of a statement of facts by the lower court. Willis & Bro. v. Smith, decided by the Supreme Court, April 26, 1897.

Also believing that the action of the lower court was correct, and approving the same, we overrule the motion of Mrs. V. B. Smith to strike out the statement of facts, filed October 23, 1897.

On the 28th of October, 1897, intervener A. S. Hawkins filed a motion in this court to strike out the statement of facts in the cause and prays that the same be disregarded. This motion is based upon the ground that while it purports to be an agreed statement of facts and not made up by the judge upon disagreement of counsel, it shows upon its face that he did not agree to it; and therefore it should not be considered as to him.

He recovered judgment in the court below as intervener, for 111 acres of the land in suit. Counsel for defendants Willis & Bro., Virginia B. Smith, and the heirs of Harris, and for plaintiff Kattner, signed the statement of facts as an agreed statement. No one signed it for the intervener, A. S. Hawkins. In this condition, it was approved by the trial judge. No notice of appeal was given from the judgment of the lower court; the cause comes to this court on writ of error sued out by Kattner and P. J. Willis & Bro.

In such case, no negligence being imputable to Hawkins or his counsel in failing to prepare the statement, it would not be presumed that the approval of the same by the judge was intended as his, the court's, statement of the evidence, independently of agreement of counsel. It should be considered as a statement of facts only for the parties who agreed to it, and not for Hawkins, who did not agree to it. As affecting his rights, the statement should be disregarded, and his motion and prayer to that effect is sustained. Lacey v. Ashe, 21 Texas, 396; Barnhart v. Clark, 59 Texas, 553; Blow v. Heirs of De La Garza, 42 Texas, 232; Renn v. Samos, 42 Texas, 104; Brown v. Masterson, 38 S. W. Rep., 1027.

It will not be presumed that the trial judge made up the statement of facts, unless counsel disagree. McManus v. Wallis, 52 Texas, 540. See contra, Schneider v. Stephens, 60 Texas, 420.

We will now consider the main case. The judgment in favor of the

intervener Hawkins will not be disturbed, as his pleadings authorized it. Willis & Bro. and Kattner v. Smith et al., decided by this court December 16, 1896.

The plaintiff's, William Kattner's, title on the trial was deraigned by evidence as follows:

The following plot was introduced in evidence (agreed to as being correct), showing the James A. Wells survey, and the subdivisions of the same in controversy:

It was agreed that Annie P. Harris, Rebecca P. Harris, Lillie B. Fisher, Walter P. Fisher, Cora L. Davenport, Wharton Davenport, and John W. Harris were the legal representatives and heirs at law of John B. Harris, who executed the deed to D. C. McCormick under which all the parties claim; and that the Harris heirs were entitled to recover all the land lying north of a line beginning at the Thompson S. E. corner and running S. 71 E. to the E. line of the J. A. Wells survey, which land, recovered by them from Kattner, amounts to 90 acres.

It was also agreed that Eula Nall, J. P. Nall, C. G. Bennett, and Addie Bennett were the only heirs and legal representatives of H. R. Bennett deceased.

Patent was issued by the State to John W. Harris, assignee of J. A. Wells, July 21, 1894, embracing 14,502,005 square varas, about 2566 8-10 acres of land, as shown in the above plot.

John W. Harris by quitclaim deed (not dated) conveyed to D. C. Mc-Cormick 640 acres of the Wells survey, which it was agreed was located by beginning at the J. A. Wells S. W. corner; thence N. 19 E. 1153 varas with the west line of the Wells to the Thompson corner; thence S. 71 E. 3501 vrs. to the E. line of the Wells; thence with the E. and S. lines of the Wells to the beginning. The field notes embrace about 714 4-10 acres of land, or 74 4-10 acres more than 640.

D. C. McCormick executed a deed to H. C. Smith, July 27, 1878, conveying "a certain tract of land, part of the James A. Wells survey * * * containing 320 acres, described as follows: Begin at the S. W. corner of the Hallmark survey; thence N. 19 E. 1153 vrs. to E. line of survey in the name of Thompson; thence S. 71 E. 950 vrs. to S. E. corner of said Thompson survey; thence N. 19 E. 450 vrs. to corner in E. line of said Thompson survey, a live oak, N. 35 E. 4 vrs.; thence S. 19 E. 1126 vrs. from S. E. corner of Bennett survey; thence S. 19 W. 1126 to place of beginning."

H. C. Smith on the 29th day of March, 1881, by deed, conveyed to Virginia B. Smith (filed in county clerk's office *March 15,* 1882), 320 acres, part of the Wells survey, as deeded to H. C. Smith by W. C. Mc-Cormick, "beginning at the S. W. corner of the Wells survey; thence N. with Hardeman's survey 1153 vrs. to the S. W. corner of J. B. Thompson's 160 acres survey; thence E. with Thompson's S. line 950 vrs. to S. E. corner; thence N. with Thompson's E. line *to a point* intersecting the E. boundary line of Wells to beginning, will include 640 acres." The above deed was introduced by plaintiff for the sole purpose of showing *common source.*

Judgment was rendered in the County Court of Bell County the 20th day of September, 1882, in favor of P. J. Willis & Bro. against H. C. Smith, in cause No. 373, for $647.80, bearing 12 per cent interest per annum from date and costs. Alias execution on the judgment issued the 30th day of May, 1883, and on the 1st day of June, 1883, was levied on the land described in plaintiff's petition, describing it by metes and bounds, reciting advertisement and sale of the same on the 3d day of July, 1883, to P. J. Willis & Bro. for $100. The levy and return were made by J. M. Lanham, sheriff of Coryell County.

J. M. Lanham, sheriff, in accordance with the sale, made deed to P. J. Willis & Bro., dated the 4th day of August, 1883, filed for record in Coryell County on same day, conveying the land set out in plaintiff's petition.

P. J. Willis & Bro. executed a deed to William Kattner with covenants of general warranty, dated October 17, 1891, conveying the land by field notes, as described in petition of Kattner, filed for record in Coryell County January 27, 1892, reciting a consideration of $1600 paid by plaintiff to P. J. Willis & Bro., which was actually paid in cash.

P. J. Willis & Bro., "incorporated," executed deed to William Kattner, conveying same land as described in petition, for a consideration of $1600, acknowledged "to have been heretofore paid to P. J. Willis & Bro. by plaintiff, containing covenants of general warranty of title, dated December 3, 1894, properly executed and acknowledged, filed for record in Coryell County on the 12th day of February, 1895.

D. C. McCormick executed a warranty deed to Wm. Kattner, dated November 18, 1893, conveying the 320 acres of land described in plaintiff's petition, which recited "that it was made in lieu of a deed from McCormick to Smith, and that Kattner had acquired Smith's interest in the land."

All the foregoing agreements and evidence were offered and adduced by the plaintiff.

Plaintiff then read in evidence deed of D. C. McCormick to H. R. Bennett (filed the 11th day of May, 1876), with field notes as follows:

Beginning at the S. W. corner of the J. A. Wells survey, thence northward with the line of W. P. Hardeman's survey 1153 vrs. to S. W. corner of J. B. Thompson's 160 acres; thence with Thompson's S. line 950 vrs. to his S. E. corner; thence northward with Thompson's E. line "to a point from whence a line running at right angles to another point; thence at right angles from said point to intersect the S. line of said Wells survey to include 320 acres of land; thence back to the beginning."

Plaintiff Kattner proved that he bought the land described in his petition from P. J. Willis & Bro., and paid them therefor in cash, at the date of his first deed, $1600; that P. J. Willis & Bro. represented to him that their title was good, and that he knew of no adverse claim to the land by defendant Smith or any one else, and that he bought it believing he was receiving a good title.

He also proved that Bennett pointed out to him the boundaries of the land sold by P. J. Willis & Bro. to him, before his purchase, and established other facts tending to show that Bennett did not claim any land on the survey so bought by plaintiff, Bennett then having his east line fenced in part. He further offered testimony tending to show improvements made by him in good faith, and the value of the same, and other testimony was introduced showing the value of the land adjudged to parties.

Defendants the Bennetts, who were warrantors of defendant Dewald, read in evidence patent to John W. Harris, deed of Harris to D. C. McCormick, and of D. C. McCormick to H. R. Bennett, being the same title papers read in evidence by plaintiff.

The Bennetts also read in evidence deed from Eula and J. P. Nall, C. G. and Addie Bennett, the legal representatives of H. R. Bennett, deceased, to defendant Dewald, without date, and without any description of land, which deed or instrument was read in evidence over objections of plaintiffs that the description was insufficient to embrace the land in controversy.

C. G. Bennett, being sworn in his own behalf and for the heirs of H. R. Bennett and for F. Dewald, testified that his ancestor H. R. Bennett pur-

chased a block of 320 acres out of the J. A. Wells survey, as shown by the deed before introduced in evidence, and that defendant H. C. Smith purchased 320 acres adjoining the Bennett and east of it; that his ancestor was long since dead; that McCormick sold to his ancestor and defendant Smith before the line between the two tracts of land had been established; that Smith got the surveyor, and the surveyor and his ancestor located first the Bennett tract of land and then located the Smith tract east of it; that in locating the Bennett tract, they began at the Wells S. W. corner and ran 1153 vrs. to the Thompson S. W. corner; thence S. 71 E. 950 vrs. to the Thompson S. E. corner; thence N. 19 E. with the Thompson E. line 450 vrs., where they established a rock pile for corner of the Bennett; thence S. 71 E. 450 vrs., where they established the N. E. corner of the Bennett; thence S. 19 W. 1603 vrs. to the Wells S. line and to the beginning for the Bennett 320 acres; that the Smith land began at the Bennett N. E. corner and extended E. 1127 vrs.; that for many years the line then run was recognized as the division line between the two tracts, and that he pointed out said line to plaintiff, William Kattner, when he purchased the Smith land from Willis, as the true division line; but that subsequent to that time the Harris heirs fenced their land, beginning at the Thompson S. E. corner, and that the Bennetts thereby lost a part of their land, and now claim their line to stop at the S. E. corner of the Thompson survey; thence S. 71 E. so as to obtain 320 acres.

Defendant Virginia B. Smith introduced the patent from the State to John W. Harris; the deed from John W. Harris to D. C. McCormick; the deed from D. C. McCormick to H. C. Smith—all being the same title papers as introduced by plaintiff Kattner; also deed to Virginia B. Smith, being the same as introduced by plaintiff Kattner; to the introduction of which last deed, the plaintiff Kattner and Willis & Bro. objected on the ground that the description does not sufficiently identify the land in controversy, which objection being overruled, plaintiff excepted.

Virginia B. Smith testified to facts tending to show that the conveyance made to her by her husband, H. C. Smith, was to pay part of a note of H. C. Smith to her mother, Mrs. White, for $500, the consideration for the deed being $320 of the note, which note was given to her by her mother as her part of her mother's estate. No one was present when she and her husband made the agreement to sell and purchase the land, except herself and husband.

H. C. Smith testified that he paid McCormick $320 for the land in trade, and it was then, when he purchased, worth $320, and was not worth more than $320 in March, 1881, when he sold it to his wife. He states that he was insolvent, but makes other statements showing that the conveyance to his wife was to pay in part the White note. It was after his failure that Mrs. White gave the note to his wife, and he was insolvent when he conveyed to his wife.

Intervener Hawkins introduced the patent to John W. Harris, the deed of Harris to D. C. McCormick, the same title papers previously introduced by the other parties, and a general warranty deed from D. C. McCormick

to him, A. S. Hawkins, conveying to him the strip of land between the E. line of the Wells, and the E. line of the Kattner tract, extending N. 19 E. from the S. E. corner of the Wells survey 1603 varas; thence N. 71 W. to the William Kattner tract as set out in his petition, and thence with Kattner's E. line and the Wells S. line to the beginning.

Defendant P. J. Willis & Bro. as warrantors, read in evidence all the title papers introduced by Kattner, the judgment, execution, and sheriff's return of sale, as shown by evidence for Kattner.

The foregoing is substantially all the testimony in the case upon contested points, and is all that need be stated.

*Opinion.*—Plaintiffs in error's first and second assignments of error are addressed to the action of the court in admitting the deeds of H. C. Smith to Virginia B. Smith, and of Eula Nall, J. P. Nall, C. G. Bennett, and Addie Bennett, the legal representatives and heirs of H. R. Bennett, deceased, to defendant Dewald. Both deeds are objected to because of the insufficient description of the land.

We can not sustain these assignments of error, because there are no bills of exception to the rulings complained of which can be considered by the court. The bills of exception relied on were filed long after the adjournment of the court; that is, on the 27th day of September, 1895, and the court adjourned for the term, August 15, 1895. Sayles' Rev. Stats. 1879, arts. 1363, 1364, 1365; Schaub v. Brewing Co., 80 Texas, 636, 637; White v. Harris, 85 Texas, 49; Railway v. Eddins, 60 Texas, 659; Lockett v. Schurenberg, 60 Texas, 611; Willis v. Donac, 61 Texas, 589.

It is insisted by plaintiff in error Willis & Bro. that the judgment of the court is erroneous, because Kattner's action against P. J. Willis & Bro. was against a corporation in that name, and that there was no testimony that such corporation entered into any covenant of warranty with Kattner or anyone else, and because there was no evidence of the existence of any such corporation.

We find no error in the judgment, as assigned. There was no plea denying the existence of the corporation, as required by the statute (Revised Statutes, article 1265), and it was not necessary to prove its existence. A deed was read in evidence by plaintiff, Kattner, executed to P. J. Willis & Bro., "incorporated," containing the covenant of warranty upon which recovery was had. This was sufficient proof of the covenant.

Plaintiff in error P. J. Willis & Bro. assigns that the court erred in its judgment, "because the same is unsupported by the evidence, in that the judgment was for a breach of covenant relating to one tract of land described in plaintiff Kattner's third amended petition, whereas the land recovered by Virginia B. Smith and the heirs of Harris and the representatives of H. R. Bennett, deceased, described other and different tracts of land."

In support of the assignment (there is no distinct proposition under it) a statement is made "that the lands described in the deeds to Virginia B. Smith and the heirs of Bennett can not be identified by these descriptions

as the land conveyed by Willis to Kattner and described in plaintiff's petition, being the land sold him by Willis, whereas the incorrect description in the deed to Virginia B. Smith from her husband, and to Dewald by the heirs of Bennett, are the only descriptions of land which would take the title out of Kattner."

The facts that the deeds in evidence did not describe the land sued for, would not show that there was a variance in the description of the land sued for and the land recovered.

Kattner sued for the land conveyed to him by P. J. Willis & Bro. and lost the suit, thus losing the land. There can be no variance, as contended by plaintiff in error.

The next assignment of error relates to supposed errors of the court in admitting testimony of Smith on the issue that his conveyance to his wife, Virginia B. Smith, was made to defraud creditors. For reasons heretofore given, there being no proper bill of exceptions filed in time, the assignment can not be considered, even if it had merit.

The issue that the evidence does not support the judgment nor authorize a recovery by Virginia B. Smith and others is not raised by any assignment of error. So we have not discussed the question as to whether the deeds in evidence, upon which a recovery was had, described any land.

An examination of the record shows that P. J. Willis & Bro. alone assigned errors, but as warrantors brought into the suit to vouch the title of their vendee, and to answer on their warranty, they could take advantage of any error injurious to Kattner, and this may be the reason no errors are assigned by Kattner.

None of the assignments of error are well taken, and the pleadings authorizing the judgment of the court below, it is affirmed.

*Affirmed.*

Writ of error refused.