BIGHAM v. STAMPS. (No. 7619.)

(Court of Civil Appeals of Texas. Dallas. July 1, 1916.)

BOUNDARIES ⟨key⟩37(5)—ACTION—EVIDENCE.

In action to quiet title, the issue being a disputed boundary, evidence *held* to show valid agreement and location of boundary between defendant and a predecessor in title of plaintiff.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 186–189, 193; Dec. Dig. ⟨key⟩ 37(5).]

Appeal from District Court, Freestone County; A. M. Blackman, Judge.

Action by A. D. Stamps against E. V. Bigham. From judgment for plaintiff, defendant appeals. Reversed and remanded.

Dexter Hamilton, of Corsicana, for appellant.

TALBOT, J. This suit was instituted by the appellee against the appellant to recover a tract of land, a part of the D. Bratt survey situated in Freestone county. The petition is in the usual form of an action of trespass to try title, but the real question involved is one of disputed boundary. The defendant pleaded not guilty, the statutes of limitation of three, five, and ten years, and set up claim to only a part of the land in controversy. No evidence appears to have been offered in support of the pleas of limitation, and no question arises on this appeal in reference thereto. The case was tried by the court without the aid of a jury and judgment rendered in favor of the plaintiff. Defendant's motion for a new trial being overruled, he perfected an appeal to this court, and the case was submitted on briefs for appellant; no briefs having been filed in this court by appellee. The court filed the following conclusions of fact and law:

"Conclusions of Fact.

"(1) In September of the year 1898, the defendant E. V. Bigham and one J. C. Wells owned in common, or jointly, a tract of land in Freestone county, Tex., aggregating 287 acres, of which the land in controversy in this suit was a part.

"(2) In November of 1898, the said defendant, E. V. Bigham, and the said J. C. Wells, effected a partition of said tract of land, and the defendant Bigham erected a fence along the west line of the portion of the tract deeded to him by Wells, and asserted no title or claim to any portion of the tract west of this line until about the year 1910.

"(3) During the year 1910, one W. D. Anderson owned that portion of the 287-acre tract formerly owned by J. C. Wells. This he had verbally promised to sell to one Ben Pillans.

"(4) While Ben Pillans was occupying this tract of land as the tenant of Anderson, he (Pillans) and defendant Bigham undertook to agree upon a new division line between the two tracts belonging to Anderson and Bigham, respectively.

"(5) At the time of the alleged agreement as to the new division line, Pillans had no title or interest in any portion of the land in controversy. No definite or fixed line was ever agreed upon between Pillans and defendant Bigham. Anderson, the owner of the Wells tract of land, took no part either in person or by agent in the attempted establishment of this new line, and afterwards sold the land and executed a deed conveying all the land in controversy herein.

"(6) Plaintiff, A. D. Stamps, deraigned title to all the land in controversy in this suit.

"(7) The defendant, E. V. Bigham, nor those under whom he claimed, have held the land in controversy for a sufficient length of time to mature title under any of the statutes of limitation.

"Conclusions of Law.

"1. This being a suit in trespass to try title, and the plaintiff having deraigned title to the land in controversy, and there being no limitation in behalf of the defendant, and no partition or contract for the establishment of a division line, other than that asserted by the plaintiff, it follows, as a matter of law, that the plaintiff should recover herein."

The appellant contends, in substance, that the evidence adduced conclusively shows that the boundary line as claimed by him was agreed upon between him and the parties who owned the adjoining tract at the time of such agreement; that the trial court erred in finding, in the fifth paragraph of his conclusions of fact, that W. D. Anderson took no part in fixing the said boundary line, as the uncontroverted testimony showed he suggested and agreed to the running of the line by appellant and Pillans; and that the court erred in finding, in said fifth paragraph of his conclusions of fact, that, at the time of the agreement between appellant and Ben Pillans, Pillans had no title or interest in any portion of said land. These contentions of the appellant we believe to be well taken. It appears that J. C. Wells and appellant Bigham owned jointly lands purchased of W. A. Dean, situated in Navarro and Freestone counties. By deed dated September 17, 1898, these lands were partitioned; the western portion, consisting of a part of the Bishop survey and a part of the Bratt survey, being conveyed to the said Wells, and the balance, consisting of a part of the Bratt survey, being conveyed to the appellant. That part of the Bratt survey received by J. C. Wells in this partition was conveyed by Wells to J. C. Hagler, by deed dated October 20, 1898, and by J. C. Hagler to W. D. Anderson by deed dated March 16, 1901. In 1910, Ben Pillans entered into an agreement with W. D. Anderson to purchase the land, and Anderson executed and delivered to him a bond for title thereto dated November 25, 1910. Before the bond for title was executed, but evidently upon the faith that it would be, Pillans and appellant agreed that they would have the division line between appellant's tract and the tract which he (Pillans) had agreed to buy from Anderson run out and the boundary line fixed and established.

Appellant testified without dispute that he and Wells, with whom he partitioned the land, never fixed the boundary line and never knew just where it was; that he and

Pillans employed W. W. Stewart, a surveyor, to run the line; that this was done; that he (Bigham) put a division fence on the line as thus surveyed and established; that said fence was still there and had been continuously since its erection; that Pillans had moved on the land, had made improvements on it, and called it his home. Appellant further testified that at the time the survey was made to fix the boundary line he had a conversation with W. D. Anderson, as well as with Pillans; that he went to see Anderson to get him to go with him and have the surveyor run the line and Anderson told him to see Pillans; that he had sold to Pillans, and that Pillans was the one to have it surveyed; that he said, "You get Pillans and have it surveyed." W. D. Anderson testified, in substance, that at the time the survey was made the land was not his, but belonged to Pillans, and that he was not asserting title to the land at the time the fence was put up. He testified that Pillans gave him a note for $75, which, while it was called a rent note in the bond for title, was in fact a note given for interest on the purchase money, and that Pillans kept the interest paid up; that he also believed Pillans paid him something when the sale was made. Anderson further testified that Pillans sold the land to Tom Platt and that at the request of both of them he made a deed therefor to Platt. This deed was dated April 24, 1914, and on that day Platt deeded the land to appellee Stamps. W. W. Stewart, the surveyor who surveyed the land, testified that he was employed in 1910 by E. V. Bigham and Ben Pillans to locate the boundary line between them. Bigham and Pillans were both there when he ran the line. The distance in one of the calls had been scratched and another distance substituted for it. He ran the line through the shortest distance from the northeast corner of the Bratt survey to get the line between Bigham and Pillans, and it appeared the distance was shorter than the call on the south line. He then ran another distance, and Bigham and Pillans agreed to divide that distance in proportion to the amount of land each was to have in the division, provided some papers Mr. Anderson had should be the same as the papers used in running the line. He testified that it seemed to him that those papers were a partition deed between Bigham and Wells, but he did not read them, and that he supposed he had the partition deed to go by; that the question was whether or not Anderson's deed had the same field notes as the partition deed; that it was a question of distance in both tracts; that in the Wells-Bigham partition Wells got about one-third of the land and Bigham two-thirds; that there was an excess, and he divided the excess in the same proportion as nearly as he could; that, if the deed to Anderson showed the same field notes as the partition deed, then the line was to be where he fixed it; if not, then farther east about

192 varas. Pillans testified substantially as Stewart did with reference to the agreement between him and Bigham. The line agreed upon was to be the boundary line if Anderson's deed contained the same field notes as the original partition deed.

It is quite clear that the survey made by appellant and Pillans was made for the purpose of fixing the boundary line. In making this survey it was found that there was an excess of land, and this excess was divided two-thirds to Bigham and one-third to Pillans. The line thus ascertained and fixed, which was marked by the surveyor, was the line upon which Bigham immediately erected a fence. That it was agreed that this line should be the boundary line, unless it should appear that the field notes in the deed made by Hagler to Anderson should be at variance with the field notes in the Wells-Bigham partition deed, which partition deed was used by the surveyor Stewart in running the line, is shown beyond controversy. By this survey and the agreement of the parties the boundary line was definitely fixed. It also appears, without contradiction, as we understand the record, that the field notes contained in the Wells-Bigham partition deed as recorded in the deed records of Freestone county, and as set forth in the original partition deed itself, both of which were introduced in evidence, were the same as in Anderson's deed; that there was no variance between the description of the Bratt plat contained in Anderson's deed and the original partition deed. The terms of description in the original partition deed, in the deed from J. C. Wells to Hagler, in the deed from Hagler to Anderson, in the deed from Anderson to Platt, and in the deed from Platt to the plaintiff Stamps, were precisely the same, and the description of the land in all these instruments is set out in the identical terms of the original partition deed. The bond for title made by Anderson to Pillans also contains the same description. In this connection, it may be stated incidentally that appellant swore that the line was fixed and agreed upon without any condition or qualification whatever. The effect of the evidence also is to show, practically without contradiction, not only that Pillans agreed to the establishment of the boundary line as claimed by appellant, but that W. D. Anderson agreed thereto or acquiesced therein. As hereinbefore shown, appellant testified that at the time the survey was made at the request of himself and Pillans he had a conversation with Anderson, and that Anderson told him to see Pillans and to get Pillans and have the line surveyed. After the fixing of the division line by appellant and Pillans as shown, he (Anderson) never made any claim, so far as is disclosed by the record, that it was unsatisfactory to him, or that it was so fixed without his knowledge or consent. On the contrary, this line was recognized or acquiesced in by all parties for two or three years.

Pillans very shortly after the establishment of the line received a bond for title from Anderson, in accordance with their verbal agreement, lived upon the land, cultivated and improved it, with full knowledge that appellant, recognizing the division line as fixed, had placed his fence upon the line run by the surveyor Stewart. Under the facts shown by the record before us and the law applicable thereto, it must be held that the true division line is where it was established by the surveyor Stewart acting under the agreement of the parties. The legal title, it is true, was in Anderson at the time the division line was run and fixed by the surveyor Stewart, and even if it should be conceded, which is not done, that at that time Pillans had no such interest in the land as authorized him to make an agreement with appellant with respect to the establishment of the division line that would be binding on Anderson and those subsequently acquiring the land from him, still the evidence adduced shows, in our opinion, that Anderson was a party to the agreement under which said line was ascertained and fixed and that he and those holding under him are bound thereby.

We think the judgment of the court below should be reversed, and the cause remanded, and it is, accordingly, so ordered.

Reversed and remanded.