BIGHAM v. STAMPS.   (No. 8095.)

(Court of Civil Appeals of Texas. Dallas. April 26, 1919. Rehearing Denied May 31, 1919.)

1. APPEAL AND ERROR ⟬⟫569(1)—STATEMENT OF FACTS—SIGNING BY APPELLANT'S ATTORNEY.

Paper purporting to be a statement of facts and stating in its beginning and conclusions that it is a statement of facts proved on the trial and indorsed, approved as statement of facts in the case, and signed by the trial judge and appellee's counsel, will be treated as a statement of facts in the case, though not signed by appellant's counsel.

2. BOUNDARIES ⟬⟫37(5) — EVIDENCE—AGREEMENT AS TO TIME.

Evidence held to justify finding against defendant's contention that boundary claimed by him had been fixed by agreement between him and plaintiff's predecessor which was binding upon plaintiff.

Appeal from District Court, Freestone County; A. M. Blackmon, Judge.

Action by A. D. Stamps against E. V. Bigham. Judgment for plaintiff and defendant appeals. Affirmed.

Dexter Hamilton, of Corsicana, for appellant.

Boyd & Bell, of Teague, for appellee.

TALBOT, J. [1] This is the second appeal of this case. The opinion on the former appeal is reported in 187 S. W. 733. It is a suit instituted by the appellee against appellant to recover a tract of land, a part of the D. Bratt survey, situated in Freestone county. The defendant pleaded not guilty. The statutes of limitation of five and ten years, and set up claim to only a part of the land in controversy. No evidence appears to have been offered in support of the pleas of limitation. The case was tried by the court without a jury and the trial resulted in a judgment for the appellee. At a former day of the present term we affirmed the judgment of the district court because no fundamental error was apparent on the face of the record and because we were then of the opinion that the statement of facts filed with the transcript in the case fails to comply with the statute which requires that such statement shall be agreed to by the parties and approved by the judge, or in the event of a failure of the parties to agree that a statement of facts shall be prepared and certified to by the judge filed in duplicate with the clerk of the trial court, and the original sent to the appellate court as a part of the record. Upon a consideration of appellant's motion for rehearing we reached the conclusion that we erred in declining to consider the statement of

---

⟬⟫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

facts, and set aside our judgment affirming the case.

The statement of facts sent to this court is signed by counsel for appellee only with the words, "Approved as the statement of facts," and signed by "A. M. Blackmon, Judge Seventy-Seventh Judicial District of Texas." The caption shows the style and number of the case, and recites:

"The following pages contain a full, true, and correct statement of all the material facts adduced in evidence at the trial of said cause."

There is a certificate that—

"It is agreed by and between the counsel for the plaintiff and the counsel for the defendant that the foregoing 35 pages contain a full, true, and correct statement of all the material facts adduced in evidence at said trial of said cause, styled and numbered in the caption hereof, and that the same is agreed to as the statement of facts in said cause."

This certificate, as above indicated, is signed by counsel for appellee only; the name of counsel for appellant being omitted. In our search for authority upon the question, after the opinion declining to consider the statement of facts for the reason stated was handed down, which will be withdrawn, we find that the Supreme Court of this state, in the case of Schneider & Davis v. Stephens, 60 Tex. 419, has expressly decided that a statement of facts, certified to by the judge before whom the case was tried as an agreed statement, and which is only signed by counsel for one of the parties to the suit, may be considered on appeal, the presumption being that it was properly certified, citing McManus v. Wallis, 52 Tex. 534. We also find that in Dwyer v. Testard, 1 White & W. Civ. Cas. Ct. App. § 1229, it was held that where, in the beginning of the paper, it purported to be the statement of facts in the case, and concluded, "We agree that the above is a correct statement of the facts given in evidence on the trial of this case," and is signed by counsel for one of the parties, and is indorsed "Approved," and signed by the judge who tried the case the paper was "sufficiently authenticated to require it to be considered as a statement of facts." That case was distinguished from Renn v. Samos, 42 Tex. 104, in the fact that in the latter case there was nothing in the beginning or conclusion of the paper purporting to be a statement of facts to indicate that it was intended as such statement. In the case at bar the paper purporting to be a statement of facts is signed by counsel for appellee and indorsed approved as the statement of facts in the case. In its beginning and conclusion it is stated that it is a statement of the facts proved on the trial, and following the authorities cited it should and will be treated as a statement of facts in the case.

The controversy grows out of a dispute as to the true location of the boundary line between lands owned by the respective parties. The trial court filed the following conclusions of fact and law:

#### "Conclusions of Fact.

"(1) In September of the year 1898 the defendant, E. V. Bigham, and one J. C. Wells owned in common or jointly a tract of land in Freestone county, Tex., aggregating 287 acres, of which the land in controversy in this suit is a part.

"(2) In November, 1898, the defendant, Bigham, and the said J. C. Wells effected a partition of said tract of land, the defendant Bigham executing at the time a deed to J. C. Wells which embraced the land in controversy in this suit. Wells executed a deed to Bigham to all that portion of the 298 acres lying east of a line running south 30° east from the ell corner of the Bratt survey. The defendant, Bigham, erected a fence along the west line of the portion deeded him by Wells, and asserted no title or claim to any portion of the tract west of this line until about the year 1910.

"(3) In October, 1898, J. C. Wells conveyed the portion of the 287 acres received by him in the partition to J. C. Hagler, and in March, 1891, Hagler conveyed same to W. D. Anderson. The field notes in the deed from Wells to Hagler and from Hagler to Anderson covering and embracing the land in controversy herein, as well as the field notes in the original partition deed, were as follows: 'Second tract: Being a part of the Bratt survey and described as follows: Beginning at the N. W. corner of said survey; thence N. 60° E. 524 vrs. to a corner in the north line of said survey, being one of the ell corners of this tract; thence 30° E. 770 vrs. to a stake in the south line of this tract; thence south 60° W. 692 vrs. to a stake in the west line of the Bratt survey; thence N. 30° W. to the place of beginning.'

"(4) During the year 1910, W. D. Anderson having verbally contracted to sell the tract of land owned by him, as above described, to one Ben Pillans, he, Pillans, and the defendant, Bigham, employed a surveyor to establish and mark on the ground the boundary line between the land owned by Bigham and contracted for by Pillans. Pillans at this time had no deed to the land or no description of same, and did not know where the ell corner as called for in the partition deed was located. The surveyor employed to do the work had in his possession the old partition deed between Bigham and Wells. From the field notes therein contained he began at the N. W. corner of the Bratt survey and ran a line north 60 east for the distance therein called for, viz. 524 varas and stopped; this being the point at which Bigham was then contending the boundary line should be located. To embrace the land originally conveyed to Wells and then owned by Anderson, the line should have been projected to the 'ell corner' of the Bratt survey, or a distance of some 168 varas farther. Pillans, not knowing where the ell corner was, and not understanding the calls in the original partition deed, agreed that, if the land east of the point where the surveyor had stopped was not embraced and covered by Mr. Anderson's deed, and there was in fact an excess, or some land which had not theretofore

been divided, he would agree to divide such excess between himself and Bigham in the same proportion that the land had been originally divided between Wells and Bigham. Pillans never agreed to the location of a boundary line which would encroach upon, or take, any of the land embraced in or covered by the Anderson deed.

"(5) Plaintiff, A. D. Stamps, deraigned title to all the land in controversy in this suit.

"(6) The defendant, Bigham, nor those under whom he claims, have held the land in controversy for a sufficient length of time to mature title under any of the statutes of limitation."

"Conclusions of Law.

"(1) There being no question but that the land in controversy is covered and embraced by the partition deed to Wells, as well as by all the other deeds, including a deed under which plaintiff holds, and it being equally clear from the testimony that Pillans agreed to the proposed location of the line only in the event it did not encroach upon or take some portion of the land he had contracted to purchase from Anderson, i. e., only in the event it was in fact the true boundary line, and it further appearing that Pillans, nor those claiming under him, ever at any time thereafter ratified or acquiesced in the location of the proposed line, I conclude as a matter of law that his, Pillans' statement, then and there made, to the effect that he would agree to the line if 'the field notes of the Anderson deed showed to be the same as the surveyor was then using,' was insufficient to bind Pillans to the establishment of the line at the point contended for by defendant, and to thereby effect an unintentional conveyance, without consideration, of the land he then owned.

"(2) This being a suit in trespass to try title, and the plaintiff having deraigned title to the land in controversy, and there being no limitation in behalf of defendant, and no contract for the establishment of any division line as contended for by defendant, it follows that plaintiff should recover herein the land sued for."

[2] The contentions of the appellant are, in substance, that the evidence shows conclusively that the boundary line as claimed by him was agreed upon and fixed by him and the parties who owned the adjoining tract at the time of such agreement; that, the boundary line having been fixed by understanding of all parties interested in the land at the time, and having been thereafter acquiesced in by them, the boundary thus fixed will not be disturbed; that the trial court erred in finding in the second paragraph of his conclusions of fact that the defendant, Bigham, erected a fence along the west line of the portion of land deeded to him by Wells and asserted no title or claim to any portion of the tract west of this line until about the year 1910; and that the findings of fact contained in the fourth paragraph of the court's conclusions of fact (which paragraph is set out above) is wholly at variance with the evidence adduced in the trial of the case, the evidence all showing that the boundary line was unknown to all parties, and that the sole purpose of the survey was to fix a boundary line.

On the former appeal we held that the evidence showed a valid agreement and location of the boundary line between the appellant and the predecessor in title of the appellee, and appellant now insists, in effect, that the evidence shown by the record on the present appeal is substantially the same as it was on the former appeal, and the judgment of the court below should be reversed, and judgment here rendered for the appellant. Much of the evidence in the record now is practically the same as it was on the former appeal, but a careful comparison of it with that shown by the statement of facts sent up on that appeal which is before us has led to the conclusion that it is materially different in important particulars, and that therefore we would not be warranted in disturbing the judgment of the district court. It is clear from the evidence that the survey made by appellant and Pillans shown in the trial court's findings was made for the purpose of fixing the boundary line. On the former appeal the evidence showed, and we held, that in making the survey it was found that there was an excess of land and that it was agreed between appellant and Pillans, which was binding on Anderson from whom Pillans had contracted to buy, that the line established by the survey should be the boundary line, and the excess divided two-thirds to appellant and one-third to Pillans, unless it should appear upon a later examination that the field notes in the deed made by Hagler to Anderson should be at variance with the field notes in the Wells-Bigham partition deed, which partition deed was used by the surveyor Stewart in running the line. The evidence also showed that Pillans sold the land to Tom Platt, and that at the request of both of them Anderson made a deed therefor to Platt, and without contradiction that the field notes contained in the Wells-Bigham partition deed were exactly the same as in the deed from Hagler to Anderson; that the terms of description in the original partition deed, in the deed from Wells to Hagler, in the deed from Hagler to Anderson, in the bond for title made by Anderson to Pillans, in the deed from Anderson to Platt, and in the deed from Platt to the appellee, Stamps, were precisely the same. The effect of the evidence also was to show, practically without contradiction, not only Pillans agreed upon the condition stated to the establishment of the boundary line as claimed by appellant, but that Anderson, who had executed to him a bond for the title to the land, agreed thereto or acquiesced therein, and under all the facts shown we were of opinion that it should be then held that the true division line between the lands of the parties was where it was established by the surveyor Stewart. The evidence in the record on this appeal is conflicting as to the terms and conditions upon which Pillans agreed that this

line should be the boundary line. The testimony of the appellant is substantially the same as on the former appeal, but the testimony of Pillans and Stewart, the surveyor who run the line, claimed by appellant to be the division line, varies somewhat from their former testimony, and is to the effect and justifies, it occurs to us, the findings of the trial court that Stewart, the surveyor, in running the line in question began at the N. W. corner of the Bratt survey and ran a line north 60° east for the distance called for in the partition deed between appellant and Wells, viz., 524 varas, and stopped; that to embrace the land originally conveyed to Wells the line should have been projected to "ell corner" of the Bratt survey, a distance of some 168 varas farther; that Pillans, not knowing where the "ell corner" was, and not understanding the calls in the original partition deed, agreed that, if the land east of the point where the surveyor had stopped was not embraced and covered by Mr. Anderson's deed, and there was in fact an excess of some land which had not theretofore been divided, he would agree to divide such excess between himself and Bigham in the same proportion that the land had been originally divided between Wells and appellant; that Pillans never agreed to the location of a boundary line which would encroach upon or take any of the land embraced in or covered by the Anderson deed. The deeds under which appellee claims described the land as follows:

"Being a part of the Bratt survey and described as follows: Beginning at the N. W. corner of said survey; thence N. 60° E. 524 vrs. to a corner in the north line of said survey, being one of the ell corners of this tract; thence S. 30° E. 770 vrs. to a stake in the south line of this tract; thence S. 60° W. 692 vrs. to a stake in the west line of the Bratt survey; thence N. 30° W. to the place of beginning."

The testimony of Pillans, as shown by the record now before this court, touching the agreement between him and appellant with respect to the boundary line, is as follows:

"I told Mr. Bigham [appellant] after the line had been run that in the event there was any gain in the land that it ought to be divided between us in the same proportion as the land was originally divided between him and Mr. Wells; that, if the field notes in Mr. Anderson's deed showed that, or was like the one we had, I would agree to the line. I told him that, if Mr. Anderson's deed did not call for this extra land, then it ought to be divided between us. No; I did not definitely agree to the establishment of the line as run. * * * No; I did not state that I then agreed with Bigham on the line run. The understanding was that if Anderson's deed did not call for it then this land was to be divided, but if it did call for it, I would not agree to the line."

In answer to questions propounded by the court the witness said:

"Yes; I mean to say that I did not intend to agree to the partition line as then fixed, if the land between that line and the line where Mr. Bigham had theretofore had his fence was in fact embraced by her field notes in the Anderson deed."

In answer to the court's question:

"Then I understand that you meant on that occasion that the partition line as agreed to, or as run, would be agreed to by you only in the event it was not encroaching upon some of Mr. Anderson's land that you expected to buy from him"

—the witness said:

"Yes; if I had known that the line proposed was encroaching upon the land covered by the Anderson deed, I would not have agreed to same. No; I never did agree to the line."

The surveyor Stewart testified in this connection that he ran the division line; that the line as run was an agreed line between Bigham and Pillans, provided it agreed with the field notes of a deed that W. D. Anderson had to the land. He said:

"The papers that we had had two different calls on the same line—there were two different distances given, the shorter distance creating an excess. Yes; the excess was divided between the two, but I do not know in what proportion it was divided. I do know one got more than the other. Yes; I say that we were to see a deed that Mr. Anderson had, and the line as run was to be the true line if it agreed with the Anderson deed. The agreement was that the line run was to be the fixed boundary line between us; provided the field notes in the Anderson deed corresponded to the field notes of this partition deed from Bigham to Wells."

In answer to question asked by the trial court, this witness said he understood that it was Mr. Pillans' agreement that he would be bound by the line as fixed by witness provided it did not encroach upon the land embraced in that deed. This witness was asked by the court:

"Was it understood that this line would be abided by by Pillans in the event the deed held by Anderson showed the distance as called for in the partition deed, or was it agreed that he would abide by it provided the land on the east of the proposed line was not in fact embraced and covered by the Anderson deed?"

To which question the witness replied:

"My understanding was, if this land on the east was embraced in the Anderson deed, that Pillans was to go by what was covered by the Anderson deed."

And he further testified to the effect that as a matter of fact the Anderson deed did embrace the land in controversy.

We regard the controlling issues, as the case comes to us in the present record, as issues of fact, and that the findings of the trial court upon those issues was justified by the evidence. There may be some apparent incon-

sistent statements of the witnesses Pillans and Stewart as to whether it was understood and agreed that Pillans would be bound by the line run in the event the field notes in Anderson's deed were the same as the field notes in the partition deed between appellant and Wells or in the event the line did not encroach upon the land embraced in Anderson's deed, but we regard them as more apparent than real. At all events we do not think it can successfully be denied that there was substantial evidence to authorize the court to find that the agreement was that Pillans would be bound by the line run only in the event it did not encroach upon the land embraced in Anderson's deed and that it did encroach upon that land.

The appellee proved a regular chain of title from the admitted common source, and it results from what we have said that the judgment of the district court should be affirmed; and it is so ordered.

Affirmed.